## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JENNIFER CARRERA, CAROL ANDERSON, and BECKY JO PALMER, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br>v.<br><br>WHITEPAGES, INC.<br><br>　　　　Defendant. | CASE NO. 24-1408<br><br>**COMPLAINT—CLASS ACTION**<br><br>(JURY TRIAL DEMANDED) |

On behalf of themselves and all others similarly situated, Jennifer Carrera ("Plaintiff Carrera"), Carol Anderson ("Plaintiff Anderson"), and Becky Jo Palmer ("Plaintiff Palmer") complain and allege as follows based on personal knowledge as to themselves, the investigation of their counsel, and information and belief as to all other matters, and demand trial by jury. Plaintiffs believe that substantial evidentiary support will exist for the allegations in this complaint, after a reasonable opportunity for discovery.

### NATURE OF THE CASE

1.　　This case is about upholding the rights of millions of Americans who have never interacted with Whitepages, Inc. but who have nonetheless had their names and other personally identifying information appropriated by Defendant to advertise and promote its products and services.

2.     Defendant has built a lucrative business collecting, cataloging, and selling access to Americans' personally identifying information.  The crux of Defendant's business model is selling paid subscriptions to its Whitepages Premium platform, which provides access to a vast database of personally identifying information and a suite of other products.

3.     To advertise paid subscriptions to Whitepages Premium and other services available on its own platform, Defendant misappropriates the names, identities, and other personally identifying information it has collected on millions of Americans.

4.     Specifically, Defendant has created, published, and disseminated publicly accessible free-preview "profile" pages for each of the millions of Americans (including each of the Plaintiffs and proposed class members) whose personal information appears in its database.  Each of these free-preview "profile" pages includes the name, job title, employer, age range, home address, and other personally identifying information of the person to whom it corresponds.  Defendant has carefully optimized each of these free-preview "profile" pages with source code designed to maximize its visibility on internet search engines.

5.     Each free-preview "profile" page uses its subject's name and identity to advertise paid subscriptions to Defendant's platform and other services it offers for sale.  Each page displays the subject's name, employer, and other corresponding

CLASS ACTION COMPLAINT

personal information to any member of the public who encounters the page. These personally identifying details are accompanied by a button to "Sign Up" to purchase a subscription, along with many other inducements to purchase a subscription and related products and services.

6.    Several other types of webpages published by Defendant similarly use Plaintiffs' and the putative class members' names and personally identifying information to advertise premium subscriptions to its platform and related products and services, as detailed herein.

7.    In this way, Defendant uses the names and identities of Plaintiffs and millions of other unsuspecting Americans to advertise and promote paid subscriptions to its platform and related products and services without providing prior notice to, much less obtaining consent from, any of these people.

8.    The right of publicity statutes of Washington, California, Illinois, and Ohio clearly prohibit what Defendant has done.

9.    Washington's Personality Rights Act ("WPRA") prohibits companies like Defendant from using a person's "name, voice, signature, photograph, or likeness" for purposes of "advertising products, merchandise, goods, or services," without having first obtained the person's consent. *See* RCW 63.60.050.

10.    The California Right of Publicity Law ("CRPL") provides that "Any person who knowingly uses another's name, voice, signature, photograph, or

CLASS ACTION COMPLAINT

likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof."  Cal. Civ. Code § 3344.

11.    The Illinois Right of Publicity Act ("IRPA") ensures an individual the "right to control and to choose whether and how to use an individual's identity for commercial purposes."  765 ILCS 1075/10.  It provides that "A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person . . . ."  765 ILCS 1075/30.  It defines an "identity" as "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice."

12.    The Ohio Right of Publicity in Individual's Persona Act ("ORPIPA") creates a "property right in an individual's persona to use the individual's persona for a commercial purpose."  Ohio Rev. Code Ann. § 2741.01.  It defines "persona" as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value."  Ohio Rev. Code Ann. § 2741.01(A).  It provides that "Commercial purpose" means," *inter alia*,

the use of a persona "For advertising or soliciting the purchase of products, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter."  Ohio Rev. Code Ann. § 2741.01(B).

13.    The WPRA, CRPL, IRPA, and ORPIPA are herein collectively referred to at times as the "Right of Publicity Statutes."

14.    As alleged herein, Defendant systematically uses Plaintiffs' and millions of other Americans' names, identities, and other personally identifying information to advertise, promote, and sell paid subscriptions to Whitepages Premium and other services, without having asked for, much less obtained, any of their consent – in clear violation of the Right of Publicity Statutes.

15.    Accordingly, Plaintiffs bring this action, individually and on behalf of the proposed classes defined below, to redress and put a stop to Defendant's violations of the Right of Publicity Statutes.

**PARTIES**

16.    Defendant Whitepages, Inc. is a Delaware corporation headquartered in Seattle, Washington.    Defendant owns and operates the website www.whitepages.com, where it sells products and services to persons throughout the United States.    Defendant also owns and operates the websites www.peoplesearch.com and www.411.com, both of which advertise paid

Whitepages Premium subscriptions and other products and services available for sale on www.whitepages.com.

17.    Plaintiff Carrera is a natural person and is, and at all times relevant hereto was, a resident of Martinez, California.

18.    Plaintiff Anderson is a natural person and is, and at all times relevant hereto was, a resident of Bushnell, Illinois.

19.    Plaintiff Palmer is a natural person and is, and at all times relevant hereto was, a resident of Zanesville, Ohio

## JURISDICTION AND VENUE

20.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because (i) at least one member of each of the putative classes is a citizen of a state different from the Defendant, (ii) the amount in controversy exceeds $5,000,000 with respect to each of the putative classes, exclusive of interest and costs, and (iii) there are at least 100 members of each of the putative classes.

21.    Personal jurisdiction and venue are proper because Defendant maintains its corporate headquarters in Seattle, Washington, which is within this judicial District.

## APPLICABLE STATUTORY SCHEMES

**I.    Washington's Personality Rights Act**

22.    The WPRA defines a property right in the use of several characteristics associated with one's identity: "Every individual or personality has a property right in the use of his or her name, voice, signature, photograph, or likeness." *See* RCW 63.60.010.

23.    The WPRA specifies that it is "intended to apply to all individuals and personalities, living and deceased, regardless of place of domicile or place of domicile at time of death." *Id*.

24.    The WPRA prohibits companies like Defendant from, *inter alia*, publicly using or holding out an individual's "name, voice, signature, photograph, or likeness" for purposes of "advertising products, merchandise, goods, or services," without having first obtained the individual's consent. *See* RCW 63.60.050.

25.    The WPRA provides for, *inter alia*, statutory damages of $1,500.00 per violation of the statute and injunctive relief. *See* RCW 63.60.060.

26.    As explained below, Defendant disregarded its legal responsibilities to all of the Plaintiffs and millions of other Americans nationwide by using their names and other personally identifying information to sell and offer to sell subscriptions to its platform, without any of their consent—in direct violation of the WPRA.

## II.    California's Right of Publicity Law

27.    Recognizing the need to protect its citizens' rights of publicity, the California legislature enacted the CRPL to establish a right to control the use of one's name and likeness, among other identifying attributes, in commercial advertising.

28.    The CRPL prohibits companies like Defendant from, *inter alia*, using an individual's name or likeness, in any manner, to advertise or sell, or solicit purchases of, products or services.  Specifically, Section (a) of the CRPL states, in pertinent part:

> Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable for any damages sustained by the person or persons injured as a result thereof.

Cal. Civ. Code § 3344(a).

29.    The CRPL provides for, *inter alia*, statutory damages of $750.00 per violation, as well as any profits attributable to the unauthorized use of the person's name or likeness.  *See id.* § 3344(a).

30.    As explained below, Defendant disregarded its legal responsibilities to Plaintiff Carrera and millions of other California residents by using their names and other personally identifying information to advertise and promote, and to solicit sales

of, subscriptions to its platform, without any of their consent—in direct violation of the CRPL.

### III.    Illinois's Right of Publicity Act

31.    The IRPA prohibits companies like Defendant from, *inter alia*, publicly using or holding out an individual's identity, such as their name, likeness, or other personally identifying attribute, in connection with the sale or offering for sale of a product, good, or service.  *See* 765 ILCS 1075/5, 30(a).  Specifically, Section 30 of the IRPA states, in pertinent part:

> A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons specified in Section 20 of this Act or their authorized representative.

765 ILCS 1075/30(a).

32.    The IRPA defines "identity" as "an attribute of an individual that serves to identify the individual to an ordinary, reasonable viewer, or listeners including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice."  765 ILCS 1075/5.

33.    The IRPA defines "commercial purpose" as, *inter alia*, "the public use or holding out of an individual's identity . . . on or in connection with the offering for sale or sale of a product, merchandise, goods, or services," or "for purposes of

advertising or promoting products, merchandise, goods, or services[.]"  765 ILCS 1075/5.

34.    The IRPA provides for, *inter alia*, statutory damages of $1,000.00 per violation of the statute, as well as punitive damages for willful violations.  *See* 765 Ill. Comp. Stat. 1075/40.

35.    As explained below, Defendant disregarded its legal responsibilities to Plaintiffs Aitken and Anaya and millions of other Illinois residents by using their names and other personally identifying information to sell and offer to sell subscriptions to its platform, without any of their consent—in direct violation of the IRPA.

**IV.    Ohio's Right of Publicity in Individual's Persona Act**

36.    Ohio similarly recognizes the need to protect individuals' ability to control how their personas are used for commercial purposes.  Its legislature enacted ORPIPA to recognize a right of control over the commercial use of one's persona and establish a legal regime for the protection of that right.

37.    ORPIPA creates a "property right in an individual's persona to use the individual's persona for a commercial purpose."  Ohio Rev. Code Ann. § 2741.01.

38.    ORPIPA defines "persona" as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value."  Ohio Rev. Code Ann. § 2741.01(A).

39.    ORPIPA defines "commercial purpose" to include, *inter alia*, uses of an individual's persona "[f]or advertising or soliciting the purchase of products, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter."  Ohio Rev. Code Ann. § 2741.01(B).

40.    ORPIPA provides that, subject to certain exceptions not applicable here, "a person shall not use any aspect of an individual's persona for a commercial purpose . . . [d]uring the individual's lifetime."  Ohio Rev. Code Ann. § 2741.02(A).

41.    "A person who violates section 2741.02 of the Revised Code is liable in a civil action to the person injured by the violation for," *inter alia*, "statutory damages in the amount of at least two thousand five hundred dollars and not more than ten thousand dollars[.]"  Ohio Rev. Code Ann. § 2741.07.

## FACTUAL BACKGROUND

42.    As the self-styled "authority in people search,"[1] Defendant has built a lucrative business selling subscriptions to its web-based platform and related products and services.

43.    Defendant operates at least three "people search" websites: (1) www.whitepages.com; (2) www.peoplesearch.com; and (3) www.411.com.

---

[1]  Whitepages, Inc., "Whitepages – Official Site,"  https://www.whitepages.com/.

44.    Each of these three websites exist to advertise "premium" subscriptions to Defendant's web-based platform, which is hosted on www.whitepages.com, as well as other products and services sold by Defendant.

45.    And on each of these three websites, Defendant misappropriates millions of Americans' names, personas, identities, and other personally identifying information to advertise paid "premium" subscriptions to its web-based platform and related products and services.

46.    Defendant's misappropriation of millions of American's names, personas, identities, and other personally identifying information to advertise paid "premium" subscriptions to its web-based platform and related products and services directly violates each of the Right of Publicity Statutes.

**I.    Defendant Misappropriates Plaintiffs' and Class Members' Names, Identities, and Personas for Advertising Purposes on Whitepages.com**

47.    The website www.whitepages.com hosts Defendant's web-based subscription platform, Whitepages Premium.

48.    Paying subscribers to Whitepages Premium gain access to a vast database of Americans' personally identifying information, including their names, email addresses, phone numbers, physical addresses, employers, and more.

49.    According to Defendant, its Whitepages Premium subscribers "get accurate contact data for more than 250 million people in the U.S.," including "more

than 515 million verified email addresses," as shown in the following screenshot from the www.whitepages.com website.[2]



50.     Defendant offers several tiers of paid subscriptions to its platform, as shown in the following screenshot.[3]

---

[2]     Whitepages, Inc., "Accurate Contact Information to Power Your Business," available at https://www.whitepages.com/business-pricing.

[3]     Whitepages, Inc., "The Official Whitepages," available at https://www.whitepages.com/checkout/pricing.

CLASS ACTION COMPLAINT



51.    Whitepages Premium is more than an online version of a phone book. Each Whitepages Premium tier includes: (1) a certain number of "lookups" in Defendant's contact database; and (2) access to additional "time-saving tools."

52.    Whitepages Premium's "time-saving tools" facilitate expeditious use of the names and contact information contained in Defendant's database, typically for business-development purposes.  They also provide insights into the real property market, including anticipated forecasts for property values.  In some cases, the tools

included with Whitepages Premium also include a limited number of "background checks," which enable the subscriber to obtain additional information about a particular person, such as his or her criminal history or involvement in civil litigation.

53.    For example, the first tier of Whitepages Premium, entitled "Premium Contact Info," offers 20 "lookups" and a tool enabling the subscriber to "Save & Export Contacts."

54.    The second and third tiers of Whitepages Premium, "Premium Business" and "Premium Business Enterprise," offer a certain number of "lookups" plus access to "Email Addresses," "Property Value Forecasts," and "Speed Search."

55.    The "time-saving tools" that come with a subscription are prominently advertised on Defendant's website.[4]

---

[4] Whitepages, Inc., "Accurate Contact Information to Power Your Business," available at https://www.whitepages.com/business-pricing.

CLASS ACTION COMPLAINT



56.    For enterprise customers, Defendant offers additional tiers of Whitepages Premium subscriptions.  Generally, the enterprise tiers include a certain number of "lookups" per month and additional data and services, like "property values," "appreciation forecasting," and a certain number of "background reports."

57.    The features of the enterprise tiers are depicted in the following screenshot.[5]

---

[5] *Id*.



58.     Defendant has built a lucrative business selling Whitepages Premium subscriptions and related products and services.  Defendant claims to have over 30

million monthly customers.[6]  It boasts that "250,000 businesses trust Whitepages' industry-leading data."[7]

59.    Defendant has built and now reaps significant profit from its Whitepages.com business by trading off of the names, personas, and identities of millions of Americans, without obtaining their consent or providing them compensation of any kind.

60.    Defendant has done this by publishing millions of free-preview "profile" pages on www.whitepages.com, each of which uses the name, address, workplace, phone number, email address, and other personally identifying information about a particular American to advertise subscriptions to its web-based platform without consent.

61.    Defendant has published and disseminated the free-preview "profile" pages on www.whitepages.com in Washington state.  Defendant has done so from its corporate headquarters, which is located in Washington state.

62.    Each free-preview "profile" page contains links to numerous other webpages which misappropriate Plaintiffs' and the putative class members' names,

---

[6]    Whitepages, Inc., "Whitepages Corporate Website," available at https://about.whitepages.com/.

[7]    Whitepages, Inc., "Accurate Contact Information to Power Your Business," available at https://www.whitepages.com/business-pricing.

CLASS ACTION COMPLAINT

identities, personas, and other personally identifying information in advertisements for paid Whitepages Premium subscriptions and related products or services.

63.   In addition to the free-preview "profile" pages, Defendant publishes multiple related pages which use Plaintiff's and the putative class members' names, identities, personas, and other personally identifying information to advertise Whitepages Premium and related products and services.

64.   Defendant generates a substantial amount of revenue from its sales of Whitepages Premium subscriptions and related products and services to persons who entered Defendant's sales pipeline through its free-preview "profile" page and related pages published on www.whitepages.com.

65.   Defendant has published free-preview "profile" pages and the related pages on www.whitepages.com for each of the Plaintiffs and the putative class members.

**A.    Plaintiff Jennifer Carrera**

66.   Plaintiff Carrera is, and has been at all times relevant to this action, a resident of Benicia, California.

67.   Plaintiff Carrera works as a bookkeeping clerk at Caris Tax Services.

68.   Plaintiff Carrera is in her 40s.

69.   Defendant has published a free-preview "profile" page on www.whitepages.com which misappropriates Plaintiff Carrera's name, identity,

persona, and personally identifying information to advertise subscriptions to its web-based platform.  An excerpt from that webpage appears in the following screenshot.[8]



---

[8] Whitepages, Inc., "Jennifer Lynn Carrera | 40s | Cambridge Dr Unit 11, Benicia, CA" available at https://www.whitepages.com/name/Jennifer-Lynn-Carrera/Benicia-CA/P79zXw0YLA3.

CLASS ACTION COMPLAINT

70.   Plaintiff Carrera's name appears no less than 43 times on the free-preview "profile" page on www.whitepages.com which misappropriates her name, identity, persona, and other personally identifying information.

71.   Defendant published this free-preview "profile" page on www.whitepages.com for the sole purpose of advertising paid subscriptions to Whitepages Premium and related products and services it offers for sale.

72.   The free-preview "profile" page misappropriating Plaintiff Carrera's name, identity, persona, and other personally identifying information on www.whitepages.com contains numerous exhortations to purchase access to her personally identifying information, including statements such as "Sign Up."

73.   A plethora of links route potential customers into Defendant's sales pipeline on the free-preview "profile" page misappropriating Plaintiff Carrera's name, identity, persona, and other personally identifying information.

74.   For example, if a visitor clicks "View Jennifer's Contact Info," then the following page displays her name, age, city and state of residence, and other personally identifying information, along with an inducement to "Get these details and more with Premium," as shown in the excerpt below.[9]

---

[9]   Whitepages, Inc., "Summary | Whitepages" available at https://www.whitepages.com/checkout/summary?wp_term=ContactInfo&wp_content=CTA&wp_source=person_details&wp_medium=PersonContactInfoUpsell&funnelType=person_onepages_1&wpId=P79zXw0YLA3 (circle added for emphasis).



75.    This very same page contains several promotions and testimonials for Whitepages Premium further down the page, as shown in the following excerpt.[10]

---

[10] *Id.* (circles added for emphasis).



76.     Clicking "Show More" on the above-pictured page reveals additional testimonials concerning the benefits of Whitepages Premium, this time from the perspectives of "Legal Professionals," "Personal Privacy," and "Online Dating."  As noted, these appear on the very same page displaying Plaintiff Carrera's name, age, city and state of residence, and other personally identifying information.

CLASS ACTION COMPLAINT

77.     Clicking "Unlock Jennifer's Full Report" on the above-pictured page brings users to the following "Select Plan" page displaying Plaintiff Carrera's first name and several subscription options.[11]



¹¹     Whitepages, Inc., "Summary | Whitepages" available at https://www.whitepages.com/checkout/summary?wp_term=ContactInfo&wp_cont ent=CTA&wp_source=person_details&wp_medium=PersonContactInfoUpsell&fu nnelType=person_onepages_1&wpId=P79zXw0YLA3&summary=seen.

CLASS ACTION COMPLAINT

78.     While visitors are on the page pictured above, a "pop up" box appears after a few moments.  This "pop up" box contains an advertisement using Plaintiff Carrera's name to promote a "5-day trial membership for $1" to Defendant's Whitepages Premium.  The advertisement touts Whitepages Premium as providing access to the "complete contact info" and "all phones & addresses" for each of the millions of persons whose information appears in Defendant's vast database.



79.     When a user clicks on the "Select" button under the "All-Access One-Time" header on the "Select Plan" page, they are greeted with yet another

CLASS ACTION COMPLAINT

advertisement using Plaintiff Carrera's name, age, and city and state of residence to promote sales of Defendant's products and services (in this case, an "extra background report," offered for $7.99), as pictured below.[12]



80.     Other links on the free-preview "profile" page bearing Plaintiff Carrera's name, identity, persona, and other personally identifying information similarly route into Defendant's sales pipeline.  For example, clicking on the "View

---

[12]     Whitepages, Inc., "Secure Checkout" available at https://www.whitepages.com/checkout/secure?dpId=5db23815-427b-4061-83f3-d36cd5231551&ft=person_onepages_1&isAnnual=false&wp_term=ContactInfo&wp_content=CTA&wp_source=person_details&wp_medium=PersonContactInfoUpsell&funnelType=person_onepages_1&wpId=P79zXw0YLA3 (circle added for emphasis).

Background Report" button on the free-preview "profile" page brings prospective customers to the following page which states "Your background report on Jennifer Carrera is ready," displays her age, and presents a cost of $11.99 for the report.[13]



81.    Further down on the above-pictured page, the following sales pitch appears for the Whitepages Premium subscription service.[14]



## Why isn't Whitepages free?

We work hard to make as much of our data as possible free. Whitepages Premium offers sensitive details and information you just can't find anywhere else, which is why we charge a small fee to cover our data costs.

82.    Clicking "GET FULL REPORT" on the above-pictured page brings prospective customers to another page which uses Plaintiff Carrera's name, identity, persona, and personally identifying information (specifically, her age and town and state of residence) in an advertisement for a package of additional background reports, as pictured below.[15]

---

[14] *Id.*

[15]    Whitepages,   Inc.,   "Secure   Checkout,"   available   at https://www.whitepages.com/checkout/secure?dpId=80bcd3d7-22f4-44e6-8383-dc515fb057b4&ft=bg_onepages_1&type=bgReport&isAnnual=false&funnelType=bg_onepages_1&wpId=P79zXw0YLA3&wp_content=HeaderLink&wp_medium=PersonContactInfoUpsell&wp_source=person_details&wp_term=BGReport (circle added for emphasis).



83.    Plaintiff Carrera never consented the use of her name, identity, or persona for use in Defendant's advertisements for "premium" subscriptions or packages of background reports on www.whitepages.com.

84.    Plaintiff Carrera values her right to control the commercial use of her name, identity, persona, and other personally identifying information.

85.    Plaintiff Carrera's name, identity, persona, and other personally identifying information has commercial value, as demonstrated by Defendant's many-fold misappropriations of them in advertising for its Whitepages Premium platform and related products and services on www.whitepages.com.

86.    Defendant benefits from its misappropriation of Plaintiff Carrera's name, identity, persona, and other personally identifying information because its use

of Plaintiff Carrera's name, identity, persona, and other personally identifying information in its advertisements and other promotional material on www.whitepages.com (including a free-preview "profile" page pertaining to Plaintiff Carrera) entices persons to purchase paid subscriptions to its platform and to purchase other related products and services on its website.

87.    Additionally, the inclusion of Plaintiff Carrera's and millions of other persons' personal attributes in free-preview "profile" pages on www.whitepages.com demonstrates the breadth of information available to prospective customers.  Demonstrating this breadth of this information through the use of Plaintiff Carrera's and the putative class members' names, identities, and personas is commercially valuable to Defendant, as it enhances the formidability of Defendant's brand in the eyes of would-be purchasers of Defendant's products and services.

88.    Defendant's creation and publication of a free-preview profile page on www.whitepages.com on which Plaintiff Carrera's name, identity, persona, and other personally identifying information appears, alongside links advertising Whitepages Premium subscriptions and other related products and services, constitutes a "use" of these attributes for purposes of advertising products, merchandise, goods, or services in violation of the WPRA.

89.   Each separate page misappropriating Plaintiff Anderson's name, identity, persona, or personality on www.whitepages.com constitutes a separate "use" for purposes of advertising products, merchandise, goods, or services in violation of the WPRA.

90.   Likewise, Defendant's creation and publication of a free-preview profile page on www.whitepages.com on which Plaintiff Carrera's name, identity, persona, and other personally identifying information appears, alongside links advertising Whitepages Premium subscriptions and other related products and services, constitutes a "use" of these attributes for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services in violation of the CPRL.

91.   Each separate page misappropriating Plaintiff Carrera's identity through the use of her name on www.whitepages.com constitutes a separate "use" for commercial purposes in violation of the CPRL.

92.   Plaintiff Carrera suffered mental anguish as a result of Defendant's unauthorized uses of her name, identity, and persona on www.whitepages.com in the manner alleged herein.  Upon learning that her name, identity, and other personal details were being used by Defendant to sell its products and services on the open market for its own financial gain on www.whitepages.com, Plaintiff Carrera became worried, frustrated, and concerned, disturbing her peace of mind in a meaningful

CLASS ACTION COMPLAINT

way—just as would occur to any reasonable person under the same or similar circumstances.

### B.    Plaintiff Carol Anderson

93.    Plaintiff Anderson is, and has been at all times relevant to this action, a resident of Bushnell, Illinois.

94.    Before her retirement, Plaintiff Anderson worked as a teacher at Western Illinois University.

95.    Plaintiff Anderson is in her 70s.

96.    Defendant has published a free-preview "profile" page on www.whitepages.com which misappropriates Plaintiff Anderson's name, identity, persona, and personally identifying information to advertise paid subscriptions to Whitepages Premium and related products and services.  An excerpt from that free-preview "profile" page appears in the following screenshot.[16]

---

[16] Whitepages, Inc., "Carol B Anderson | 70s | Clover Ln, Bushnell, IL" available at https://www.whitepages.com/name/Carol-B-Anderson/Bushnell-IL/Pr84dnAaa8j.

CLASS ACTION COMPLAINT



97.     Plaintiff Anderson's name appears no less than 30 times on the free-preview "profile" page on www.whitepages.com which misappropriates her name, identity, persona, and other personally identifying information.

CLASS ACTION COMPLAINT

98.    Defendant    published    this    free-preview    "profile"    page    on
www.whitepages.com  for  the  sole  purpose  of  advertising  paid  subscriptions  to
Whitepages Premium and related products and services if offers for sale.

99.    The    free-preview    "profile"    page    on    www.whitepages.com
misappropriating Plaintiff Anderson's name, identity, persona, and other personally
identifying information contains numerous exhortations to purchase access to her
personally identifying information, including statements such as "Sign Up," among
many others.

100.   A plethora of links routing potential customers into Defendant's sales
pipeline  appears  on  the  free-preview  "profile"  page  misappropriating  Plaintiff
Anderson's name, identity, persona, and other personally identifying information on
www.whitepages.com.

101.   For example, if a visitor clicks the link titled "View Carol's Contact
Info," the resulting page displays Plaintiff Anderson's name, age, city and state of
residence, and other personally identifying information directly alongside a message
reading "Get these details and more with Premium."  An excerpt from this page is
pictured below.[17]

---

[17]         Whitepages,         Inc.,         "Summary,"         available         at
https://www.whitepages.com/checkout/summary?wp_term=ContactInfo&wp_cont
ent=CTA&wp_source=person_details&wp_medium=PersonContactInfoUpsell&fu
nnelType=person_state_onepages_1&wpId=Pr84dnAaa8j.

CLASS ACTION COMPLAINT



102.    Further down on this very same page, Defendant includes several additional promotions and testimonials for Whitepages Premium, as pictured in the excerpt below.[18]

---

[18] *Id.*

CLASS ACTION COMPLAINT



103.   Clicking "Show More" on the above-pictured page reveals additional testimonials concerning the benefits of Whitepages Premium, this time from the perspectives of "Legal Professionals," "Personal Privacy," and "Online Dating."  As noted, these appear on the very same page displaying Plaintiff Anderson's name, age, city and state of residence, and other personally identifying information.

104.   Other links on the free-preview "profile" page bearing Plaintiff Anderson's name, identity, persona, and other personally identifying information similarly route into Defendant's sales pipeline.  For example, clicking on the "View Background Report" button on the free-preview "profile" page brings prospective customers to a page which states "Your background report on Carol Anderson is ready," and displays her age, and presents a cost of $11.99 for the report.[19]

---

[19]      Whitepages,          Inc.,          "Search,"          available          at
https://www.whitepages.com/checkout/search?wp_term=BGReport&wp_content=
HeaderLink&wp_source=person_details&wp_medium=PersonContactInfoUpsell
&funnelType=bg_onepages_1&wpId=Pr84dnAaa8j.

CLASS ACTION COMPLAINT



105.   The above-pictured page also contains the following sales pitch for the

Whitepages Premium subscription service.[20]

---

[20] *Id.*

## Why isn't Whitepages free?

We work hard to make as much of our data as possible free. Whitepages Premium offers sensitive details and information you just can't find anywhere else, which is why we charge a small fee to cover our data costs.

106. Clicking "GET FULL REPORT" on the page pictured above brings prospective customers to a page which uses Plaintiff Anderson's name, identity, persona, and personally identifying information (specifically, her age and town and state of residence) to advertise a discounted price on a package that allows purchasers to generate multiple background report pertaining to any of the millions of persons whose personally identifying information appears in Defendant's database, as pictured below.[21]

---

[21]      Whitepages, Inc., "Secure Checkout," available at https://www.whitepages.com/checkout/secure?dpId=80bcd3d7-22f4-44e6-8383-dc515fb057b4&ft=bg_onepages_1&type=bgReport&isAnnual=false&funnelType=bg_onepages_1&wpId=Pr84dnAaa8j&wp_content=HeaderLink&wp_medium=PersonContactInfoUpsell&wp_source=person_details&wp_term=BGReport (circle added for emphasis).



107.   Plaintiff Anderson never consented the use of her name, identity, or persona for use in Defendant's advertisements for "premium" subscriptions to its platform or packages of background reports on www.whitepages.com.

108.   Plaintiff Anderson values her right to control the commercial use of her name, identity, persona, and other personally identifying information.

109.   Plaintiff Anderson's name, identity, persona, and other personally identifying information has commercial value, as demonstrated by Defendant's many-fold misappropriation of them in advertising for its web-based platform and other services for sale on www.whitepages.com.

110.   Defendant benefits from its misappropriation of Plaintiff Anderson's name, identity, persona, and other personally identifying information because its use

of Plaintiff Anderson's name, identity, persona, and other personally identifying information in its advertisements and other promotional material on www.whitepages.com (including a free-preview "profile" page pertaining to Plaintiff Anderson) entices persons to purchase paid subscriptions to its platform and to purchase other related products and services on its website (such as, e.g., packages allowing for the generation of multiple background reports).

111.   Additionally, the inclusion of Plaintiff Anderson's and millions of other persons' personal attributes in free-preview "profile" pages on www.whitepages.com demonstrates the breadth of information available to prospective customers.  Demonstrating this breadth of information through the use of Plaintiff Anderson's and the putative class members' names, identities, and personas is commercially valuable to Defendant, as it enhances the formidability of Defendant's brand in the eyes of would-be purchasers of Defendant's products and services.

112.   Defendant's creation and publication of a free-preview profile page on www.whitepages.com on which Plaintiff Anderson's name, identity, persona, and other personally identifying information appears, alongside links advertising Whitepages Premium subscriptions and other related products and services, constitutes a "use" of these attributes for purposes of advertising products, merchandise, goods, or services in violation of the WPRA.

113.   Each separate page misappropriating Plaintiff Anderson's name, identity, persona, or personality on www.whitepages.com constitutes a separate "use" for purposes of advertising products, merchandise, goods, or services in violation of the WPRA.

114.   Likewise, Defendant's creation and publication of a free-preview profile page on www.whitepages.com on which Plaintiff Anderson's name, identity, persona, and other personally identifying information appears, alongside links advertising Whitepages Premium subscriptions and other related products and services, constitutes a "use" of these attributes for commercial purposes in violation of the IRPA.

115.   Each separate page misappropriating Plaintiff Anderson's identity through the use of her name on www.whitepages.com constitutes a separate "use" for commercial purposes in violation of the IRPA.

### C.   Plaintiff Becky Jo Palmer (f/k/a Becky Jo Needham)

116.   Plaintiff Palmer is, and has been at all times relevant to this action, a resident of Zanesville, Ohio.

117.   Plaintiff Palmer was formerly legally named Becky Jo Needham, which was her married name.  Her legal name changed back to Becky Jo Palmer following her divorce.  She is, and for all times relevant to this action, has been known and recognized by both names.

118.   Plaintiff Palmer is in her 60s.

119.   Defendant   has   published   a   free-preview   "profile"   page   on
www.whitepages.com   which   misappropriates   Plaintiff   Palmer's   name,   identity,
persona,   and   personally   identifying   information   to   advertise   subscriptions
Whitepages   Premium   and   related   products   and   services.    An   excerpt   from   that
webpage appears in the following screenshot.[22]

---

[22] Whitepages, Inc., "Becky J Needham | 60s | Armco Ave, Zanesville, OH"
available   at   https://www.whitepages.com/name/Becky-J-Needham/Zanesville-
OH/Pm8717L2Pyz.

CLASS ACTION COMPLAINT



120.   As shown in the screenshot above, the free-preview "profile" page misappropriating Plaintiff Palmer's name, identity, and persona on www.whitepages.com prominently displays her former legal married name, Becky

CLASS ACTION COMPLAINT

Jo Needham, along with her current legal name Becky Jo Palmer (which is listed as an "Alias").

121.   Plaintiff Palmer's name appears no less than 31 times on the free-preview "profile" page on www.whitepages.com which misappropriates her name, identity, persona, and other personally identifying information.

122.   Defendant   published   this   free-preview   "profile"   page   on www.whitepages.com for the sole purpose of advertising paid subscriptions to Whitepages Premium and related products and services it offers for sale.

123.   The free-preview "profile" page misappropriating Plaintiff Palmer's name, identity, persona, and other personally identifying information on www.whitepages.com contains numerous exhortations to purchase access to her personally identifying information, including statements such as "Sign Up."

124.   A plethora of links routing potential customers into Defendant's sales pipeline appear on the free-preview "profile" page misappropriating Plaintiff Palmer's name, identity, persona, and other personally identifying information on www.whitepages.com.

125.   For example, clicking on the link which states "View Becky's Contact Info" brings users directly to a page which displays Plaintiff Palmer's married name, age, city and state of residence, and other personally identifying information directly

alongside a message reading "Get these details and more with Premium." An excerpt from this page is pictured below.[23]



---

[23]         Whitepages, Inc., "Summary," available at https://www.whitepages.com/checkout/summary?wp_term=ContactInfo&wp_content=CTA&wp_source=person_details&wp_medium=PersonContactInfoUpsell&funnelType=person_state_onepages_1&wpId=Pm8717L2Pyz (circle added for emphasis).

CLASS ACTION COMPLAINT

126.   Further down on this very same page, Defendant includes several additional promotions and testimonials for Whitepages Premium, as pictured in the excerpt below.[24]



127.   Clicking "Show More" on the above-pictured page reveals additional testimonials concerning the benefits of Whitepages Premium from the perspectives of "Legal Professionals," "Personal Privacy," and "Online Dating."  These appear on the very same page displaying Plaintiff Palmer's name, age, city and state of residence, and other personally identifying information.

128.   Clicking "Show More" on the above-pictured page reveals additional testimonials concerning "Legal Professionals," "Personal Privacy," and "Online Dating" regarding the benefits of Whitepages Premium.

129.   Other links on the free-preview "profile" page bearing Plaintiff Palmer's name, identity, persona, and other personally identifying information similarly route into Defendant's sales pipeline.  For example, clicking on the "View Background Report" button on the free-preview "profile" page brings prospective customers to a page stating "Your background report on Becky Needham is ready," displaying her age, and presenting a cost of $11.99 for the report.[25]

---

[25]      Whitepages,          Inc.,          "Search,"          available          at https://www.whitepages.com/checkout/search?wp_term=BGReport&wp_content= HeaderLink&wp_source=person_details&wp_medium=PersonContactInfoUpsell &funnelType=bg_onepages_1&wpId=Pm8717L2Pyz.



130.   Clicking "GET FULL REPORT" on the above-pictured page brings prospective customers to a page which features Plaintiff Palmer's married name, identity, persona, and personally identifying information (specifically, her age and town and state of residence) in an advertisement for a package that allows purchasers to generate multiple background report pertaining to any of the millions of persons

CLASS ACTION COMPLAINT

whose personally identifying information appears in Defendant's database, as pictured below.[26]



131.  Plaintiff Palmer never consented the use of her name, identity, or persona for use in Defendant's advertisements for "premium" subscriptions to its platform or packages of background reports.

---

[26]      Whitepages, Inc., "Secure Checkout," available at https://www.whitepages.com/checkout/secure?dpId=80bcd3d7-22f4-44e6-8383-dc515fb057b4&ft=bg_onepages_1&type=bgReport&isAnnual=false&funnelType=bg_onepages_1&wpId=Pm8717L2Pyz&wp_content=HeaderLink&wp_medium=PersonContactInfoUpsell&wp_source=person_details&wp_term=BGReport (circle added for emphasis).

132.   Plaintiff Palmer values her right to control the commercial use of her name, identity, persona, and other personally identifying information.

133.   Plaintiff Palmer's name, identity, persona, and other personally identifying information has commercial value, as demonstrated by Defendant's many-fold misappropriation of them in advertising for its web-based platform and other services for sale.

134.   Defendant benefits from its misappropriation of Plaintiff Palmer's name, identity, persona, and other personally identifying because its use of Plaintiff Palmer's name, identity, persona, and other personally identifying information in its advertisements and other promotional material on www.whitepages.com (including a free-preview "profile" page pertaining to Plaintiff Palmer) entices persons to purchase paid subscriptions to its platform and to purchase other related products and services on its website (such as, e.g., packages allowing for the generation of multiple background reports).

135.   Additionally, the inclusion of Plaintiff Palmer's and millions of other persons' personal attributes in free-preview "profile" pages on www.whitepages.com demonstrates the breadth of information available to prospective customers.  Demonstrating this breadth of information through the use of Plaintiff Palmer's and the putative class members' names, identities, and personas is commercially valuable to Defendant, as it enhances the formidability of

Defendant's brand in the eyes of would-be purchasers of Defendant's products and services.

136.   Defendant's creation and publication of a free-preview profile page on www.whitepages.com on which Plaintiff Palmer's name, identity, persona, and other personally identifying information appears, alongside links advertising Whitepages Premium subscriptions and other related products and services, constitutes a "use" of these attributes for purposes of advertising products, merchandise, goods, or services in violation of the WPRA.

137.   Each separate page misappropriating Plaintiff Palmer's name, identity, persona, or personality on www.whitepages.com constitutes a separate "use" for purposes of advertising products, merchandise, goods, or services in violation of the WPRA.

138.   Likewise, Defendant's creation and publication of a free-preview profile page on www.whitepages.com on which Plaintiff Palmer's name, identity, persona, and other personally identifying information appears, alongside links advertising Whitepages Premium subscriptions and other related products and services, constitutes a "use" for a commercial purpose in violation of the ORPIPA.

139.   Each separate page misappropriating Plaintiff Palmer's persona through the use of her name on www.whitepages.com constitutes a separate "use" for a commercial purpose in violation of the ORPIPA.

CLASS ACTION COMPLAINT

II.    **Defendant Misappropriates Plaintiffs' and Class Members' Names, Identities, and Personas for Advertising Purposes on PeopleSearch.com**

140.    Defendant also owns and operates the website www.peoplesearch.com.

141.    Defendant's sole purpose in operating www.peoplesearch.com is to advertise paid Whitepages Premium subscriptions and related products and services.

142.    Defendant publishes free-preview "profile" pages on www.peoplesearch.com which misappropriate the names, identities, personas, and personally identifying information of millions of Americans to advertise Whitepages Premium subscriptions and related products and services.

143.    Each free-preview "profile" page published on www.peoplesearch.com, like each free-preview "profile" page published on Whitepages.com (addressed above), displays personally identifying information for the relevant individual to whom the page pertains.  For example, the page may display the individual's name, approximate age, and town and state of residence.

144.    Defendant's sole purpose in displaying a person's personally identifying information on a free-preview "profile" page published on www.peoplesearch.com is to advertise paid Whitepages Premium subscriptions and related products and services.

145.    As previously discussed, Whitepages Premium is a subscription-based product or service that provides paid subscribers the ability to search for, obtain

CLASS ACTION COMPLAINT

personally identifying information about, and to generate background reports pertaining to, any of the millions of Americans whose information appears in Defendant's database.

146.  Defendant generates a substantial amount of revenue from its sales of Whitepages Premium subscriptions and related products and services to persons who entered Defendant's sales pipeline through its free-preview "profile" pages published on www.peoplesearch.com.

147.  Defendant has published and disseminated the free-preview "profile" pages on www.peoplesearch.com in Washington state.  Defendant has done so from its corporate headquarters, which is located in Washington state.

148.  None of the Plaintiffs or putative class members consented to Defendant using their names, identities, personas, or personally identifying information on www.peoplesearch.com to advertise paid Whitepages Premium subscriptions or other products or services it offers for sale.

### A.    Plaintiff Jennifer Carrera

149.  Defendant has published a free-preview "profile" page on www.peoplesearch.com which misappropriates Plaintiff Carrera's name, identity, persona, and other personally identifying information to advertise paid subscriptions to Whitepages Premium and related services and products available for sale on www.whitepages.com.

150. Plaintiff Carrera's name, address, approximate age, and other personally identifying information is displayed on the free-preview profile page misappropriating her identity on www.peoplesearch.com alongside a statement that reads: "Get more phone numbers with Whitepages Premium."

151. Further down on Plaintiff Carrera's free-preview "profile" page, the page states "Get more addresses with Whitepages Premium."

152. Clicking on the links reading "Get more phone numbers with Whitepages Premium" and "Get more addresses with Whitepages Premium" routes prospective customers directly into Defendant's sales pipeline for "premium" subscriptions on www.whitepages.com.

153. Plaintiff Carrera never consented to the use of her name, identity, or persona in Defendant's advertisements for its own products and services on www.peoplesearch.com.

154. Plaintiff Carrera values her right to control the commercial use of her name, identity, persona, and other personally identifying information.

155. Plaintiff Carrera's name, identity, persona, and other personally identifying information has commercial value, as demonstrated by Defendant's many-fold misappropriations of them in advertising for its Whitepages Premium platform and related products and services on www.peoplesearch.com.

156.   Defendant benefits from its misappropriation of Plaintiff Carrera's name, identity, persona, and other personally identifying information because its use of Plaintiff Carrera's name, identity, persona, and other personally identifying information in its advertisements and other promotional material on www.peoplesearch.com (including a free-preview "profile" page pertaining to Plaintiff Anderson) entices persons to purchase paid subscriptions to its platform and to purchase other related products and services on its website.

157.   Additionally, the inclusion of Plaintiff Carrera's and millions of other persons' personal attributes in free-preview "profile" pages on www.peoplesearch.com demonstrates the breadth of information available to prospective customers.  Demonstrating this breadth of information through the use of Plaintiff Carrera's and the putative class members' names, identities, and personas is commercially valuable to Defendant, as it enhances the formidability of Defendant's brand in the eyes of would-be purchasers of Defendant's products and services.

158.   Defendant's creation and publication of a free-preview profile page on www.peoplesearch.com on which Plaintiff Carrera's name, identity, persona, and other personally identifying information appears, alongside links advertising Whitepages Premium subscriptions and other related products and services,

CLASS ACTION COMPLAINT

constitutes a "use" of these attributes for purposes of advertising products, merchandise, goods, or services in violation of the WPRA.

159. Likewise, Defendant's creation and publication of a free-preview profile page on www.peoplesearch.com on which Plaintiff Carrera's name, identity, persona, and other personally identifying information appears, alongside links advertising Whitepages Premium subscriptions and other related products and services, constitutes a "use" of these attributes for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services in violation of the CPRL.

160. Plaintiff Carrera suffered mental anguish as a result of Defendant's unauthorized uses of her name, identity, and persona on www.peoplesearch.com in the manner alleged herein. Upon learning that her name, identity, and other personal details were being used by Defendant to sell its products and services on the open market for its own financial gain, Plaintiff Carrera became worried, frustrated, and concerned, disturbing her peace of mind in a meaningful way—just as would occur to any reasonable person under the same or similar circumstances.

### B.    Plaintiff Carol Anderson

161. Defendant has published a free-preview "profile" page on www.peoplesearch.com which misappropriates Plaintiff Anderson's name, identity, persona, and other personally identifying information to advertise Whitepages

Premium subscriptions and related products and services available for sale on www.whitepages.com.

162.   Plaintiff Anderson's name, address, approximate age, and other personally identifying information is displayed on the free-preview "profile" page on www.peoplesearch.com alongside statements that read: "Get more phone numbers with Whitepages Premium" and "Get more addresses with Whitepages Premium."

163.   Clicking on the links reading "Get more phone numbers with Whitepages Premium" and "Get more addresses with Whitepages Premium" routes prospective customers directly into Defendant's sales pipeline for "premium" subscriptions on www.whitepages.com.

164.   Plaintiff Anderson never consented to the use of her name, identity, or persona in Defendant's advertisements for its own products and services on www.peoplesearch.com.

165.   Plaintiff Anderson values her right to control the commercial use of her name, identity, persona, and other personally identifying information.

166.   Plaintiff Anderson's name, identity, persona, and other personally identifying information has commercial value, as demonstrated by Defendant's many-fold misappropriations of them in advertising for its Whitepages Premium platform and related products and services on www.peoplesearch.com.

CLASS ACTION COMPLAINT

167.   Defendant benefits from its misappropriation of Plaintiff Anderson's name, identity, persona, and other personally identifying information because its use of Plaintiff Anderson's name, identity, persona, and other personally identifying information in its advertisements and other promotional material on www.peoplesearch.com (including a free-preview "profile" page pertaining to Plaintiff Anderson) entices persons to purchase paid subscriptions to its platform and to purchase other related products and services on its website.

168.   Additionally, the inclusion of Plaintiff Anderson's and millions of other persons' personal attributes in free-preview "profile" pages on www.peoplesearch.com demonstrates the breadth of information available to prospective customers.  Demonstrating this breadth of information through the use of Plaintiff Anderson's and the putative class members' names, identities, and personas is commercially valuable to Defendant, as it enhances the formidability of Defendant's brand in the eyes of would-be purchasers of Defendant's products and services.

169.   Defendant's creation and publication of a free-preview profile page on www.peoplesearch.com on which Plaintiff Anderson's name, identity, persona, and other personally identifying information appears, alongside links advertising Whitepages Premium subscriptions and other related products and services,

constitutes a "use" of these attributes for purposes of advertising products, merchandise, goods, or services in violation of the WPRA.

170. Each separate page misappropriating Plaintiff Anderson's name, identity, persona, or personality on www.peoplesearch.com constitutes a separate "use" for purposes of advertising products, merchandise, goods, or services in violation of the WPRA.

171. Likewise, Defendant's creation and publication of a free-preview profile page on www.peoplesearch.com on which Plaintiff Anderson's name, identity, persona, and other personally identifying information appears, alongside links advertising Whitepages Premium subscriptions and other related products and services, constitutes a "use" of these attributes for commercial purposes in violation of the IRPA.

### C.   Plaintiff Becky Jo Palmer

172. Defendant has published a free-preview "profile" page on www.peoplesearch.com which misappropriates Plaintiff Palmer's name, identity, persona, and other personally identifying information to advertise Whitepages Premium subscriptions and related products and services available for sale on www.whitepages.com.

173. The free-preview "profile" page misappropriating Plaintiff Palmer's identity on www.peoplesearch.com prominently displays her former married name

("Becky J Needham"), along with her current legal name Becky Jo Palmer (listed under "Also Known As").

174.   The free-preview "profile" pages misappropriating Plaintiff Palmer's identity displays her name, address, approximate age, and other personally identifying information is displayed alongside a statement that reads: "Get more addresses with Whitepages Premium."

175.   Clicking on the "Get more addresses with Whitepages Premium" link brings prospective customers directly into Defendant's sales pipeline for "premium" subscriptions on www.whitepages.com.

176.   Plaintiff Palmer never consented to the use of her name, identity, or persona in Defendant's advertisements for its own products and services on www.peoplesearch.com.

177.   Plaintiff Palmer values her right to control the commercial use of her name, identity, persona, and other personally identifying information.

178.   Plaintiff Palmer's name, identity, persona, and other personally identifying information has commercial value, as demonstrated by Defendant's many-fold misappropriations of them in advertising for its Whitepages Premium platform and related products and services on www.peoplesearch.com.

179.   Defendant benefits from its misappropriation of Plaintiff Palmer's name, identity, persona, and other personally identifying information because its use

of Plaintiff Palmer's name, identity, persona, and other personally identifying information in its advertisements and other promotional material on www.peoplesearch.com (including a free-preview "profile" page pertaining to Plaintiff Palmer) entices persons to purchase paid subscriptions to its platform and to purchase other related products and services on its website.

180.   Additionally, the inclusion of Plaintiff Palmer's and millions of other persons' personal attributes in free-preview "profile" pages on www.peoplesearch.com demonstrates the breadth of information available to prospective customers.  Demonstrating this breadth of information through the use of Plaintiff Palmer's and the putative class members' names, identities, and personas is commercially valuable to Defendant, as it enhances the formidability of Defendant's brand in the eyes of would-be purchasers of Defendant's products and services.

181.   Defendant's creation and publication of a free-preview profile page on www.peoplesearch.com on which Plaintiff Palmer's name, identity, persona, and other personally identifying information appears, alongside links advertising Whitepages Premium subscriptions and other related products and services, constitutes a "use" of these attributes for purposes of advertising products, merchandise, goods, or services in violation of the WPRA.

182.   Likewise, Defendant's creation and publication of a free-preview profile page on www.peoplesearch.com on which Plaintiff Palmer's name, identity, persona, and other personally identifying information appears, alongside links advertising Whitepages Premium subscriptions and other related products and services, constitutes a "use" for a commercial purpose in violation of the ORPIPA.

### III.   Defendant Misappropriates Plaintiffs' and Class Members' Names, Identities, and Personas for Advertising Purposes on 411.com

183.   Defendant also owns and operates the website www.411.com.

184.   Defendant's sole purpose in operating www.411.com is to advertise "premium" subscriptions and other services available for sale through its web-based platform (which is hosted on www.whitepages.com).

185.   Defendant publishes free-preview "profile" pages on www.411.com which misappropriate the names, identities, personas, and personally identifying information of millions of Americans to advertise "premium" subscriptions and other services available for sale through its web-based platform hosted on www.whitepages.com.

186.   Each of these free-preview profile pages, like each free-preview "profile" page published on Whitepages.com and peoplesearch.com (addressed above), displays personally identifying information for the individual to whom it pertains.   For example, the page may display the individual's name, approximate age, and town and state of residence.

187.   Defendant's sole purpose in displaying this personally identifying information on the free-preview "profile" pages on www.411.com is to advertise "premium" subscriptions to its web-based platform and other services available for sale on www.whitepages.com.

188.   Each free-preview profile page on www.411.com includes a link to "View Cell Phone Number" and "Unlock Background Report."  Clicking either of these buttons brings the prospective customer directly into Defendant's sales pipeline for Whitepages Premium subscriptions on www.whitepages.com.

189.   Defendant generates a substantial amount of revenue from its sales of Whitepages Premium subscriptions and related products and services to persons who entered Defendant's sales pipeline through its free-preview "profile" pages published on www.411.com.

190.   Defendant has published and disseminated the free-preview "profile" pages on www.whitepages.com in Washington state.  Defendant has done so from its corporate headquarters, which is located in Washington state.

191.   Neither Plaintiffs nor the putative class members have consented to Defendant using their names, identities, personas, or personally identifying information on the www.411.com webpage to advertise "premium" subscriptions to its web-based platform or other services available for sale.

CLASS ACTION COMPLAINT

### A.    Plaintiff Jennifer Carrera

192.   Defendant has published a free-preview "profile" page on www.411.com which misappropriates Plaintiff Carrera's name, identity, persona, and other personally identifying information to advertise subscriptions to Whitepages Premium and related products and services.

193.   Clicking on "View Cell Phone Number" link on this page brings prospective customers directly into Defendant's sales pipeline for Whitepages Premium subscriptions on www.whitepages.com.

194.   Clicking on the "Unblock Background Report" link on this page brings prospective customers directly into Defendant's sales pipeline for packages of multiple background reports on www.whitepages.com.

195.   Plaintiff Carrera never consented to the use of her name, identity, or persona in Defendant's advertisements for its own products and services on www.411.com.

196.   Plaintiff Carrera values her right to control the commercial use of her name, identity, persona, and other personally identifying information.

197.   Plaintiff Carrera's name, identity, persona, and other personally identifying information has commercial value, as demonstrated by Defendant's many-fold misappropriations of them in advertising for its Whitepages Premium platform and related products and services on www.411.com.

**CLASS ACTION COMPLAINT**

198.   Defendant benefits from its misappropriation of Plaintiff Carrera's name, identity, persona, and other personally identifying information because its use of Plaintiff Carrera's name, identity, persona, and other personally identifying information in its advertisements and other promotional material on www.411.com (including a free-preview "profile" page pertaining to Plaintiff Carrera) entices persons to purchase paid subscriptions to its platform and to purchase other related products and services on its website.

199.   Additionally, the inclusion of Plaintiff Carrera's and millions of other persons' personal attributes in free-preview "profile" pages on www.411.com demonstrates the breadth of information available to prospective customers. Demonstrating this breadth of information through the use of Plaintiff Carrera's and the putative class members' names, identities, and personas is commercially valuable to Defendant, as it enhances the formidability of Defendant's brand in the eyes of would-be purchasers of Defendant's products and services.

200.   Defendant's creation and publication of a free-preview profile page on www.411.com on which Plaintiff Carrera's name, identity, persona, and other personally identifying information appears, alongside links advertising Whitepages Premium subscriptions and other related products and services, constitutes a "use" of these attributes for purposes of advertising products, merchandise, goods, or services in violation of the WPRA.

201.  Likewise, Defendant's creation and publication of a free-preview profile page on www.411.com on which Plaintiff Carrera's name, identity, persona, and other personally identifying information appears, alongside links advertising Whitepages Premium subscriptions and other related products and services, constitutes a "use" of those attributes for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services in violation of the CPRL.

202.  Plaintiff Carrera suffered mental anguish as a result of Defendant's unauthorized uses of her name, identity, and persona on www.411.com in the manner alleged herein.  Upon learning that her name, identity, and other personal details were being used by Defendant to sell its products and services on the open market for its own financial gain, Plaintiff Carrera became worried, frustrated, and concerned, disturbing her peace of mind in a meaningful way—just as would occur to any reasonable person under the same or similar circumstances.

### B.    Plaintiff Carol Anderson

203.  Defendant has published a free-preview "profile" page on www.411.com which misappropriates Plaintiff Anderson's name, identity, persona, and other personally identifying information to advertise Whitepages Premium subscriptions and related products and services.

204.   Clicking on "View Cell Phone Number" link on this page brings prospective customers directly into Defendant's sales pipeline for Whitepages Premium subscriptions on www.whitepages.com.

205.   Clicking on the "Unblock Background Report" link on this page brings prospective customers directly into Defendant's sales pipeline for packages of multiple background reports on www.whitepages.com.

206.   Plaintiff Anderson never consented to the use of her name, identity, or persona in Defendant's advertisements for its own products and services on www.411.com.

207.   Plaintiff Anderson values her right to control the commercial use of her name, identity, persona, and other personally identifying information.

208.   Plaintiff Anderson's name, identity, persona, and other personally identifying information has commercial value, as demonstrated by Defendant's many-fold misappropriations of them in advertising for its Whitepages Premium platform and related products and services on www.411.com.

209.   Defendant benefits from its misappropriation of Plaintiff Anderson's name, identity, persona, and other personally identifying information because its use of Plaintiff Anderson's name, identity, persona, and other personally identifying information in its advertisements and other promotional material on www.411.com (including a free-preview "profile" page pertaining to Plaintiff Anderson) entices

persons to purchase paid subscriptions to its platform and to purchase other related products and services on its website.

210.   Additionally, the inclusion of Plaintiff Anderson's and millions of other persons' personal attributes in free-preview "profile" pages on www.411.com demonstrates the breadth of information available to prospective customers. Demonstrating this breadth of information through the use of Plaintiff Anderson's and the putative class members' names, identities, and personas is commercially valuable to Defendant, as it enhances the formidability of Defendant's brand in the eyes of would-be purchasers of Defendant's products and services.

211.   Defendant's creation and publication of a free-preview profile page on www.411.com on which Plaintiff Anderson's name, identity, persona, and other personally identifying information appears, alongside links advertising Whitepages Premium subscriptions and other related products and services, constitutes a "use" of these attributes for purposes of advertising products, merchandise, goods, or services in violation of the WPRA.

212.   Likewise, Defendant's creation and publication of a free-preview profile page on www.411.com on which Plaintiff Anderson's name, identity, persona, and other personally identifying information appears, alongside links advertising Whitepages Premium subscriptions and other related products and services, constitutes a "use" for commercial purposes in violation of the IRPA.

213.   The free-preview "profile" page misappropriating Plaintiff Anderson's name, identity, persona, and other personally identifying information published by Defendant on www.411.com constitutes a "use" for commercial purposes in violation of the IRPA.

### C.   Plaintiff Becky Jo Palmer

214.   Defendant has published a free-preview "profile" page on www.411.com which misappropriates Plaintiff Palmer's name, identity, persona, and other personally identifying information to advertise Whitepages Premium subscriptions and related products and services.

215.   The free-preview "profile" page misappropriating Plaintiff Palmer's identity on www.411.com prominently displays her former married name ("Becky J Needham"), along with her current name Becky Jo Palmer (listed under "Also Known As").

216.   Clicking on "View Cell Phone Number" link on this page brings prospective customers directly into Defendant's sales pipeline for Whitepages Premium subscriptions on www.whitepages.com.

217.   Clicking on the "Unblock Background Report" link on this page brings prospective customers directly into Defendant's sales pipeline for packages of multiple background reports on www.whitepages.com.

218.   Plaintiff Palmer never consented to the use of her name, identity, or persona in Defendant's advertisements for its own products and services on www.411.com.

219.   Plaintiff Palmer values her right to control the commercial use of her name, identity, persona, and other personally identifying information.

220.   Plaintiff Palmer's name, identity, persona, and other personally identifying information has commercial value, as demonstrated by Defendant's many-fold misappropriations of them in advertising for its Whitepages Premium platform and related products and services on www.411.com.

221.   Defendant benefits from its misappropriation of Plaintiff Palmer's name, identity, persona, and other personally identifying information because its use of Plaintiff Palmer's name, identity, persona, and other personally identifying information in its advertisements and other promotional material on www.411.com (including a free-preview "profile" page pertaining to Plaintiff Palmer) entices persons to purchase paid subscriptions to its platform and to purchase other related products and services on its website.

222.   Additionally, the inclusion of Plaintiff Palmer's and millions of other persons' personal attributes in free-preview "profile" pages on www.411.com demonstrates the breadth of information available to prospective customers. Demonstrating this breadth of information through the use of Plaintiff Palmer's and

CLASS ACTION COMPLAINT

the putative class members' names, identities, and personas is commercially valuable to Defendant, as it enhances the formidability of Defendant's brand in the eyes of would-be purchasers of Defendant's products and services.

223.   Defendant's creation and publication of a free-preview profile page on www.411.com on which Plaintiff Palmer's name, identity, persona, and other personally identifying information appears, alongside links advertising Whitepages Premium subscriptions and other related products and services, constitutes a "use" of these attributes for purposes of advertising products, merchandise, goods, or services in violation of the WPRA.

224.   Likewise, Defendant's creation and publication of a free-preview profile page on www.411.com on which Plaintiff Palmer's name, identity, persona, and other personally identifying information appears, alongside links advertising Whitepages Premium subscriptions and other related products and services, constitutes a "use" for a commercial purpose in violation of the ORPIPA.

**IV.   Defendant Optimizes the Webpages Misappropriating Plaintiffs' and the Class Members' Names, Identities, and Personas in Search Engine Results to Reach the Widest Possible Audience**

225.   Defendant has intentionally optimized the free-preview "profile" pages and related pages which misappropriate Plaintiffs' and the putative class members' names, identities, personas, and personally identifying information to rank highly in search engine results when someone searches for the relevant individual.

226.   Specifically, Defendant included source code in all of its free-preview "profile" pages to ensure they rank highly in search engine results when a user inputs a search query for an individual's name, including in the following ways:

- Placing the individual's name on the pages dozens of times.   For example, Plaintiff Carrera's name appears at least 43 times on the www.whitepages.com free preview "profile" page misappropriating her identity.

- Placing the individual's name in the page's URL.  For example, Plaintiff Carrera's name appears in the URL for her www.whitepages.com free-preview "profile" page:

https://www.whitepages.com/name/Jennifer-Lynn-Carrera/Benicia-CA/P79zXw0YLA3

- Placing the individual's name and employer in the page titles.  For example, Plaintiff Carrera's name appears in the page title for her www.whitepages.com free-preview "profile" page, which is entitled "Jennifer Lynn Carrera | 40s | Cambridge Dr., Unit 11 Benicia, CA | Whitepages."

This is reflected in the Open Graph meta field of the page's html source code: `<title>Jennifer Lynn Carrera | 40s | Cambridge`

Dr. Unit 11 Benicia, CA | Whitepages People Search</title>

- Including schema.org descriptors in the source code so search engines can recognize the individuals' names and job titles as representing those qualities. This allows search engines to recognize the names and job titles as components of an individual's identity.[27] A brief excerpt of these extensive schema.org descriptors are reflected in the following line of the source code on Plaintiff Carrera's www.whitepages.com free-preview "profile" page:

```
{"@context":"https://schema.org","@type":"Person"
,"description":"Jennifer Carrera is in their 40s,
currently living in Benicia, CA","name":"Jennifer
Carrera","givenName":"Jennifer","familyName":"Car
rera"
```

227. Each of these web design techniques is intended to optimize the ranking of the free-preview "profile" pages in search engine results when a user searches for the name of an individual with a free-preview "profile" page—and thereby increase sales of subscriptions to Defendant's platform.

---

[27] *See* Schema.org, *Getting started with schema.org using Microdata*, available at https://schema.org/docs/gs.html.

CLASS ACTION COMPLAINT

228.   Defendant applies each of these web design techniques to the pages misappropriating Plaintiffs' and the putative class members' names, identities, personas, and other personally identifying information on www.whitepages.com, www.peoplesearch.com and www.411.com.

229.   Defendant could have easily prevented the free-preview "profile" pages from appearing in search engine results by adding a "noindex" directive to the pages' source code.[28]  Defendant chose not to.

230.   Plaintiffs are informed and believe, and thereupon allege, that during the time period relevant to this action numerous non-subscribers to Defendant's services performed searches on Google and other search engines that yielded results that included hyperlinks to each of the Plaintiffs' free-preview "profile" pages, along with summaries of the information available on such "profile" pages in the search-engine results themselves (including each of the Plaintiffs' names and other personal information pertaining to each of them).

231.   Plaintiffs are informed and believe, and thereupon allege, that during the time period relevant to this action numerous non-subscribers to Defendant's services visited each of the Plaintiffs' free-preview "profile" pages by clicking on a

---

[28] A "noindex" directive is a piece of code on the page that instructs search engines not to index the page.  *See* Google Search Central, *Block Search indexing with noindex*, available at https://developers.google.com/search/docs/crawling-indexing/block-indexing.

CLASS ACTION COMPLAINT

link to such page in the results page of a search performed on Google or another search engine.

232.   Defendant tracks, *inter alia*, the number of times when (by date and time) and from where (by, *inter alia*, IP address) each of each free-preview "profile" pages is viewed by a non-subscriber, the location from which the visitor to the page originated (such as a Google search results page or a list generated from a "free search" query on its own website), and the total numbers of persons who have visited a particular free-preview "profile page."[29]

233.   Defendant continues to improve the coding of its free-preview "profile" pages to maximize their visibility to the consuming public in the results yielded by searches on Google and other popular search engines, and employs persons (and works with contractors) who focus specifically on these efforts.

234.   Defendant employs a full-time Vice President of "Data Strategy & SEO" ("SEO" is an acronym for "search engine optimization").[30]

---

[29]   Whitepages, Inc., *General Privacy Policy*, June 25, 2024, available at https://www.whitepages.com/privacy ("Our servers collect information known as "log data," that includes your IP address, the time your computer or device visited the site, the URL of the website you arrived from, and the type of device or browser you used to access the site.").

[30]   Whitepages,      Inc.,      Team      –      Whitepages,      available      at https://about.whitepages.com/team/ (last accessed Aug. 23, 2024).

CLASS ACTION COMPLAINT

235.   Upon information and belief, search engine users have placed queries for the names of each of the Plaintiffs and putative class members, obtained results which display links to the respective free-preview "profile" pages corresponding to each of Plaintiffs and the putative class members, clicked on those links, and borne witness to the advertisements published by Defendant which misappropriate Plaintiffs' and the putative class members' names, identities, personas, and other personally identifying information as described herein.

236.   Defendant knows that its use of free-preview "profile" pages to advertise subscriptions to its platform infringes upon Plaintiffs' and the proposed class members' rights of publicity, but continues to do so anyway—and appears to have simply written off the consequences as a cost of doing business.[31]

## CLASS ACTION ALLEGATIONS

237.   Pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and where applicable, 23(c)(4), Plaintiffs Carrera, Anderson, and Palmer bring this action, on behalf of themselves and members of the "Nationwide Class," defined as follows:

> All natural persons residing in the United States for whom Defendant established a publicly-accessible free-preview

---

[31] *See* Class Action Settlement Agreement, *Butler v. Whitepages, Inc.*, No. 1:19-cv-04871 (N.D. Ill.), April 28, 2022 (resolving a previous class action in which plaintiffs alleged Defendant used their names and likenesses on its free-preview "profile" pages in violation of Ohio and Illinois's right of publicity statutes).

CLASS ACTION COMPLAINT

"profile" page on www.whitepages.com, www.peoplesearch.com, or www.411.com.

238. Pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and where applicable, 23(c)(4), Plaintiff Carrera brings this action, on behalf of herself and members of the "California Class," defined as follows:

> All natural persons residing in California for whom Defendant established a publicly-accessible free-preview "profile" page on www.whitepages.com, www.peoplesearch.com, or www.411.com.

239. Pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and where applicable, 23(c)(4), Plaintiff Anderson brings this action, on behalf of herself and members of the "Illinois Class," defined as follows:

> All natural persons residing in Illinois for whom Defendant established a publicly-accessible free-preview "profile" page on www.whitepages.com, www.peoplesearch.com, or www.411.com.

240. Pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and where applicable, 23(c)(4), Plaintiff Palmer brings this action, on behalf of herself and members of the "Ohio Class," defined as follows:

> All natural persons residing in Ohio for whom Defendant established a publicly-accessible free-preview "profile" page on www.whitepages.com, www.peoplesearch.com, or www.411.com.

241. The Nationwide Class, California Class, Illinois Class, and Ohio Class are at times collectively referred to herein as the "Classes."

CLASS ACTION COMPLAINT

242.   Excluded from the Classes are any persons who have purchased subscriptions, goods, or services from www.whitepages.com.

243.   Excluded from the Classes are any persons who have agreed to the Terms of Service of www.whitepages.com, or www.peoplesearch.com, or www.411.com.

244.   Excluded from the Classes are Defendants' officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants.  Also excluded from the Classes are members of the judiciary to whom this case is assigned, their families, and members of their staff.

245.   Plaintiffs reserve the right to modify the definitions of the Classes, including based on discovery and further investigation.

246.   The members of each of the Classes are so numerous that their individual joinder herein is impracticable.  Plaintiffs are informed and believe, and thereupon allege, that the members of each of the Classes number in the millions. The precise number of members of the Classes and their identities are unknown to Plaintiffs at this time but will be readily determined in discovery, including by reference to Defendant's records.  Members of the Classes may be notified of the pendency of this action by mail and/or publication through the records of Defendant.

247.   Plaintiffs' claims are typical of the claims of the members of the Classes they seek to represent in that Plaintiffs and all members of the Classes were injured and sustained damages by Defendant's uniform wrongful conduct—namely, Defendant's practices of using Plaintiffs' and the Classes' names, identities, personas and other personally identifying information to advertise, sell, and promote, and to solicit sales of subscriptions to its platform and other products and services, without any of their consent.

248.   Common questions of law and fact exist as to all members of each of the Classes and predominate over questions affecting only individual members. Legal and factual questions common to the Classes include, but are not limited to:

a.   Whether Defendants engaged in the alleged conduct;

b.   Whether Defendant knowingly used the names, identities, personas, and personally identifying information of the members of the Classes;

c.   Whether Defendant used their names, identities, personas, and other personally identifying information for the purposes of advertising products, merchandise, goods, or services;

d.   Whether Defendant had their consent to use their names, identities, personas, and personally identifying information in this way;

e.   Whether members of the Classes are entitled to recover statutory damages;

CLASS ACTION COMPLAINT

f.  Whether members of the Classes are entitled to equitable relief, including injunctive relief.

249.  Plaintiffs are adequate representatives of the Classes because none of the Plaintiffs' interests conflict with the interests of the other members of the Classes they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of the members of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

250.  The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Classes.  Each individual member of the Classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure

that all claims and claimants are before this Court for consistent adjudication of such issues.

**FIRST CLAIM FOR RELIEF**
**Violation of Washington's Personality Rights Act, RCW 63.60.050**
**(By All Plaintiffs, Individually and On Behalf of the Nationwide Class)**

251.   Plaintiffs Carrera, Anderson, and Palmer, on behalf of themselves and the Nationwide Class, repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

252.   Plaintiffs are "living . . . individual[s]" and thus "individual[s]" within the meaning of the WPRA.  *See* RCW 63.60.

253.   Defendant is a corporation and thus a juristic "person" within the meaning of the WPRA.  *See id.*

254.   During the time period relevant to this action, Defendant publicly used the names and other personally identifying attributes of Plaintiffs and the Nationwide Class members in the manner alleged herein, including by using such names, identities, personas, and other personally identifying information on free-preview "profile" pages and other pages that it established and promoted for each of these individuals.

255.   Defendant used and held out Plaintiffs' and the Nationwide Class members' names, identities, personas, and other personally identifying information in the manner alleged herein for the purposes of advertising, promoting, and selling,

as well as offering to sell, subscriptions to its www.whitepages.com platform and related products and services.

256.   The free-preview "profile" pages and other pages that Defendant established for Plaintiffs and each of the Nationwide Class members were, at all times relevant hereto, publicly accessible to the public at large, and in fact were designed and intended by Defendant to be accessed and viewed by as many members of the public as possible, with the aim of converting prospective customers into paying subscribers to Defendant's www.whitepages.com platform and other products and services.

257.   Defendant has published and disseminated the free-preview "profile" pages in Washington state.  Defendant has done so from its corporate headquarters, which is located in Washington state.

258.   Defendant's use of Plaintiffs' and the Nationwide Class members' names, identities, and personally identifying information on free-preview "profile" pages and other pages constituted "advertising" within the meaning of the WPRA. *See* RCW 63.60.050.

259.   Paid subscriptions to Defendant's platform, including its vast, searchable database of Americans' personally identifying information and related products and services, constitute "products, merchandise, goods, or services" within the meaning of the WPRA.  *See id.*

CLASS ACTION COMPLAINT

260.  Background reports sold by Defendant constitute "products, merchandise, goods, or services" within the meaning of the WPRA. *See id*.

261.  Prior to using and holding out Plaintiffs' and the Nationwide Class members' names and other personally identifying information for advertising purposes in the manner alleged herein, Defendant did not notify Plaintiffs nor any member of the Nationwide Class that it would do so, and neither Plaintiffs nor any member of the Nationwide Class has ever consented (in writing or otherwise) to Defendant doing so.

262.  By using Plaintiffs' and the Nationwide Class members' names, identities, and other personally identifying information to advertise its products and services, without their prior consent, Defendant infringed upon Plaintiffs' and the Nationwide Page Class members' rights of publicity in violation of the WPRA.

263.  Significant commercial value exists in the aspects of Plaintiffs' and the other Nationwide Class members' names and identities that Defendant used and continues to use in the manner alleged herein.

264.  Defendant's use of Plaintiffs' and the Nationwide Class members' names, identities, personas, and other personally identifying information in in free-preview "profile" pages and other pages was not incidental.  On the contrary, it was instrumental (and continues to be instrumental) to Defendant in obtaining paying customers to its web-based platform.  This is demonstrated by the sheer volume of

free-preview "profile" pages created by Defendant and Defendant's optimization of these pages to rank highly in search engine results.

265.   On behalf of themselves and the Nationwide Class, Plaintiffs seek: (1) an injunction requiring Defendant to obtain written consent from class members prior to the use of their names and identities to advertise products or services pursuant to RCW 63.60.060; (2) $1,500.00 in statutory liquidated damages to Plaintiffs and each Nationwide Class member pursuant to RCW 63.60.060; and (3) costs and reasonable attorneys' fees pursuant to RCW 63.60.060.

## SECOND CLAIM FOR RELIEF
### Violation of the California Right of Publicity Law, Cal. Civ. Code § 3344
### (By Plaintiff Carrera, Individually and On Behalf of the California Class)

266.   Plaintiff Carrera, individually and on behalf of the California Class, repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

267.   Defendant is a corporation and thus a juristic "person" within the meaning of the CRPL.   *See* Cal. Civ. Code § 3344(a)(1).

268.   During the time period relevant to this action, Defendant publicly used the name and other personally identifying attributes of Plaintiff Carrera and the California Class members in the manner alleged herein, including by using such names, identities, personas and other personally identifying information on free-

preview "profile" pages and other pages to advertise paid subscriptions to its www.whitepages.com platform and related products and services.

269. Defendant's use of Plaintiff Carrera's and the California Class members' names, identities, and personally identifying information on free-preview "profile" pages and other pages to advertise paid subscriptions to its www.whitepages.com platform and related products and services constitutes a "use" "for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services" within the meaning of the CRPL. *See* Cal. Civ. Code § 3344(a)(1).

270. Paid subscriptions to Defendant's platform, including its vast, searchable database of Americans' personally identifying information and related products and services, constitute "products, merchandise, goods, or services" within the meaning of the CRPL. *See id*.

271. Background reports sold by Defendant constitute "products, merchandise, goods, or services" within the meaning of the CRPL. *See id*.

272. Defendant has published and disseminated the free-preview "profile" pages in California.

273. Prior to using and holding out Plaintiff Carrera's and the California Class members' names and other personally identifying information for advertising purposes in the manner alleged herein, Defendant did not notify Plaintiff Carrera nor

any member of the California Class that it would do so, and neither Plaintiff Carrera

nor any member of the California Class has ever consented (in writing or otherwise)

to Defendant doing so.

274.   By using Plaintiff Carrera's and the California Class members' names,

identities, and other personally identifying information to advertise its products and

services, without their prior consent, Defendant infringed upon Plaintiff Carrera's

and the California Class members' rights of publicity in violation of the CRPL.

275.   Plaintiff Carrera suffered mental anguish as a result of Defendant's

unauthorized uses of her name, identity, and other personally identifying information

in the manner alleged herein.  Upon learning that her name, identity, and other

personal details were being used by Defendant to sell its products and services on

the open market for its own financial gain, Plaintiff Carrera became worried,

frustrated, and concerned, disturbing her peace of mind in a meaningful way—just

as would occur to any reasonable person (including members of the California Class)

under the same or similar circumstances.

276.   Significant commercial value exists in the aspects of Plaintiff Carrera's

and the other California Class members' names and identities that Defendant used

and continues to use in the manner alleged herein.

277. Defendant's use of Plaintiff Carrera's and the California Class

members' names, identities, and other personally identifying information in free-

preview "profile" pages and other pages to advertise paid subscriptions to its www.whitepages.com platform and related products and services was not incidental. On the contrary, it was instrumental (and continues to be instrumental) to Defendant in obtaining paying customers. This is demonstrated by the sheer volume of free-preview "profile" pages and other pages used to advertise paid subscriptions to Defendant's www.whitepages.com platform and related products and services.

278. On behalf of herself and the California Class, Plaintiff Carrera seeks: (1) an injunction requiring Defendant to obtain prior consent from the California Cass members prior to the use of their names and identities to advertise products or services; (2) $750.00 in statutory liquidated damages to Plaintiff Carrera and each California Class member; and (3) costs and reasonable attorneys' fees. *See* Cal. Civ. Code § 3344(a)(1).

## THIRD CLAIM FOR RELIEF
### Violation of the Illinois Right of Publicity Act, 765 ILCS 1075
### (By Plaintiff Anderson, Individually and On Behalf of the Illinois Class)

279. Plaintiff Anderson, individually and on behalf of the Illinois Class, repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

280. Defendant is a corporation and thus a juristic "person" within the meaning of the IRPA. *See* 765 ILCS 1075/5.

281.   During the time period relevant to this action, Defendant publicly used the names, identities, and other personally identifying attributes of Plaintiff Anderson and the Illinois Class members in the manner alleged herein, including by using such names, identities, and other personally identifying information on free-preview "profile" pages and other pages to advertise paid subscriptions to its www.whitepages.com platform and related products and services.

282.  Defendant's use of Plaintiff Anderson's and the Illinois Class members' names, identities, and personally identifying information on free-preview "profile" pages and other pages to advertise paid subscriptions to its www.whitepages.com platform and related products and services constitutes a "use" or "holding out" of those identities "in connection with the offering for sale or sale of a product, merchandise, goods, or services" or "for purposes of advertising or promoting products, merchandise, goods, or services" within the meaning of "commercial purposes" as it is defined in the IRPA.  *See* 765 ILCS 1075/5.

283.  Paid subscriptions to Defendant's platform, including its vast, searchable database of Americans' personally identifying information and related products and services, constitute "product, merchandise, goods, or services" within the meaning of the IRPA.  *See id*.

284. Background reports sold by Defendant constitute "products, merchandise, goods, or services" within the meaning of the IRPA.  *See id*.

285.   Defendant has published and disseminated the free-preview "profile" pages in Illinois.

286.   Prior to using and holding out Plaintiff Anderson's and the Illinois Class members' names and other personally identifying information for advertising purposes in the manner alleged herein, Defendant did not notify Plaintiff Anderson nor any member of the Illinois Class that it would do so, and neither Plaintiff Anderson nor any member of the Illinois Class has ever consented (in writing or otherwise) to Defendant doing so.

287.   By using Plaintiff Anderson's and the Illinois Class members' names, identities, and other personally identifying information to advertise its products and services, without their prior consent, Defendant infringed upon Plaintiff Anderson's and the Illinois Class members' rights of publicity in violation of the IRPA.

288.   Significant commercial value exists in the aspects of Plaintiff Anderson's and the other Illinois Class members' names and identities that Defendant used and continues to use in the manner alleged herein.

289.   Defendant's use of Plaintiff Anderson's and the Illinois Class members' names, identities, and other personally identifying information in free-preview "profile" pages and other pages to advertise paid subscriptions to its www.whitepages.com platform and related products and services was not incidental. On the contrary, it was instrumental (and continues to be instrumental) to Defendant

CLASS ACTION COMPLAINT

in obtaining paying customers.  This is demonstrated by the sheer volume of free-preview "profile" pages and other pages used to advertise paid subscriptions to Defendant's www.whitepages.com platform and related products and services.

290.  On behalf of herself and the Illinois Class, Plaintiff Anderson seeks: (1) an injunction requiring Defendant to obtain prior consent from the Illinois Cass members prior to the use of their names and identities to advertise products or services; (2) $1,000.00 in statutory liquidated damages to Plaintiff Anderson and each Illinois Class member; and (3) costs and reasonable attorneys' fees.  *See* 765 ILCS 1075/40; 765 ILCS 1075/50.

## <u>FOURTH CLAIM FOR RELIEF</u>
### Violation of the Ohio Right of Publicity in Individual's Persona Act, Ohio Rev. Code Ann. § 2741.
### By Plaintiff Palmer, Individually and On Behalf of the Ohio Class

291.  Plaintiff Palmer, individually and on behalf of the Ohio Class, repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

292.  Defendant is a corporation and thus a juristic "person" within the meaning of the IRPA.  *See* Ohio Rev. Code Ann. § 2741.02(A).

293.  Plaintiff Palmer's is known by, clearly identified by, and referred to by the names "Becky Jo Palmer" (her maiden name) and "Becky Jo Needham" (her former married name), both of which are her "name" within the meaning of ORPIPA.  *See* Ohio Rev. Code Ann. § 2741.01(C).

294.   During the time period relevant to this action, Defendant publicly used the names, identities, personas, and other personally identifying attributes of Plaintiff Palmer and the Ohio Class members in the manner alleged herein, including by using such names, identities, personas, and other personally identifying information on free-preview "profile" pages and other pages to advertise paid subscriptions to its www.whitepages.com platform and related products and services.

295.   Defendant's use of Plaintiff Palmer's and the Ohio Class members' names, identities, and personally identifying information on free-preview "profile" pages and other pages to advertise paid subscriptions to its www.whitepages.com platform and related products and services was for the purpose of advertising or soliciting the purchase of products, merchandise, goods, services and therefore constituted a "commercial purpose." *See* Ohio Rev. Code Ann. § 2741.01(B)(2).

296.   Paid subscriptions to Defendant's platform, including its vast, searchable database of Americans' personally identifying information and related products and services, constitute "products, merchandise, goods, services" within the meaning of the ORPIPA.  *See id*.

297.  Background reports sold by Defendant constitute "products, merchandise, goods, services" within the meaning of the ORPIPA.  *See id*.

298.   Defendant has published and disseminated the free-preview "profile" pages in Ohio.

299.   Prior to using and holding out Plaintiff Palmer's and the Ohio Class members' names and other personally identifying information for commercial purposes in the manner alleged herein, Defendant did not notify Plaintiff Palmer nor any member of the Ohio Class that it would do so, and neither Plaintiff Palmer nor any member of the Ohio Class has ever consented (in writing or otherwise) to Defendant doing so.

300.   By using Plaintiff Palmer's and the Ohio Class members' names, identities, and other personally identifying information to advertise its products and services, without their prior consent, Defendant infringed upon Plaintiff Palmer's and the Ohio Class members' rights of publicity in violation of the CRPL.

301.   Significant commercial value exists in the aspects of Plaintiff Palmer's and the other Ohio Class members' names and identities that Defendant used and continues to use in the manner alleged herein.

302.   Defendant's use of Plaintiff Palmer's and the Ohio Class members' names, identities, and other personally identifying information in free-preview "profile" pages and other pages to advertise paid subscriptions to its www.whitepages.com platform and related products and services was not incidental. On the contrary, it was instrumental (and continues to be instrumental) to Defendant

in obtaining paying customers.  This is demonstrated by the sheer volume of free-preview "profile" pages and other pages used to advertise paid subscriptions to Defendant's www.whitepages.com platform and related products and services.

303.   On behalf of herself and the Ohio Class, Plaintiff Palmer seeks: (1) an injunction requiring Defendant to obtain prior consent from the Ohio Cass members prior to the use of their names and identities to advertise products or services; (2) $2,500.00 in statutory liquidated damages to Plaintiff Palmer and each Ohio Class member; (3) costs and reasonable attorneys' fees.   *See* Ohio Rev. Code Ann. § 2741.07.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek a judgment against Defendant, individually and on behalf of the members of the Classes, as follows:

A.   For an order certifying the Classes pursuant to Federal Rule of Civil Procedure 23 and naming Plaintiffs as representatives of the Classes and Plaintiffs' undersigned attorneys as counsel to represent the Classes;

B.   For an order entering judgment in favor of the Plaintiffs and the members of the Classes on all claims for relief stated herein;

C.   For an order awarding Plaintiffs and the members of the Classes actual damages, compensatory damages, punitive damages, statutory damages, and statutory penalties, in the amounts set by statute or to be proven at trial;

CLASS ACTION COMPLAINT

D.      For an order for appropriate injunctive relief;

E.      For an order awarding pre- and post-judgment interest according to law;
and

F.      For an award of attorneys' fees, costs and expenses to Plaintiffs'
counsel.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and members of the Classes, hereby
demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims
and issues so triable.

Dated: September 5, 2024                 Respectfully submitted,

By: /s/    Nick Major

**NICK MAJOR LAW**
NICK MAJOR
450 Alaskan Way S. #200
Seattle, WA 98104
Telephone: (206) 410-5688
E-Mail: nick@nickmajorlaw.com

**HEDIN LLP**
FRANK S. HEDIN*
1395 Brickell Ave, Suite 610
Miami, Florida 33131
Telephone: (305) 357-2107
E-Mail: fhedin@hedinllp.com

**HEDIN LLP**
TYLER K. SOMES*

CLASS ACTION COMPLAINT

1100 15th Street NW, Ste 04-108
Washington, D.C. 20005
Telephone: (202) 900-3331
E-Mail: tsomes@hedinllp.com

\* Pro Hac Vice Application Forthcoming

*Counsel for Plaintiffs and the Putative Classes*

CLASS ACTION COMPLAINT