UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JENNIFER CARRERA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WHITEPAGES, INC.,<br><br>Defendant. | CASE NO. 2:24-cv-01408-JHC<br><br>ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION |

**I**
**INTRODUCTION**

This matter comes before the Court on Defendant Whitepages, Inc.'s Motion to Compel Arbitration. Dkt. # 16. The Court has reviewed the materials filed in support of and in opposition to the motion, the record, and the governing law. Being fully advised, the Court DENIES the motion.

**II**
**BACKGROUND**

Plaintiffs allege that Whitepages "operates at least three 'people search' websites: (1) www.whitepages.com; (2) www.peoplesearch.com; and (3) www.411.com." Dkt. # 1 at 11, ¶ 43. These websites use free-preview profile pages to advertise, among other things,

"premium" subscriptions to Whitepages Premium, which is hosted on www.whitepages.com. *Id.* at 12, 18, ¶¶ 44, 45, 47, 60. Subscribers to Whitepages Premium "gain access to a vast database of Americans' personally identifying information, including their names, email addresses, phone numbers, physical addresses, employers, and more." *Id.* at 12, ¶ 48.

Plaintiffs Jennifer Carrera, Carol Anderson, and Becky Jo Palmer, whose information appears on Whitepages' free-preview profile pages, *see, e.g.*, *id.* at 2, 19–20, ¶¶ 4, 69, filed a class action complaint against the company bringing claims under various states' right of publicity statutes. Plaintiffs allege that Whitepages has "publish[ed] millions of free-preview 'profile' pages on www.whitepages.com, each of which uses the name, address, workplace, phone number, email address, and other personally identifying information about a particular American to advertise subscriptions to its web-based platform without consent." *Id.* at 18, ¶¶ 59–60. Whitepages moves to compel arbitration. Dkt. # 16.

### III
### DISCUSSION

The Federal Arbitration Act (FAA) "limits the role of the judiciary 'to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Johnson v. Walmart Inc.*, 57 F.4th 677, 680 (9th Cir. 2023) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). The party seeking to compel arbitration "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Id.* at 681. "In determining whether a valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts." *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022) (quotation marks and citation omitted).

ORDER DENYING DEFENDANT'S MOTION TO
COMPEL ARBITRATION - 2

A.     Scope of Review and Request for Discovery

The Court will not consider evidence presented for the first time in Whitepages' reply brief, nor its request for limited discovery as to whether there was a valid arbitration agreement. "It is well established that new arguments and evidence presented for the first time in Reply are waived." *Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) (citing *United States v. Patterson*, 230 F.3d 1168, 1172 (9th Cir. 2000)). Similarly, failure to request discovery about whether there was a valid arbitration agreement in a motion to compel arbitration constitutes waiver. *See Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220 (9th Cir. 2019) (the defendant "waived its discovery request as it was insufficiently raised in a two-line footnote in a reply brief."); *see also Knapke v. PeopleConnect, Inc*, 38 F.4th 824, 833 (9th Cir. 2022) (distinguishing *Wilson* because the defendant "noted in its motion that if the district court did not grant its motion [to compel arbitration], it requested leave to engage in limited discovery"). Because Whitepages raises its discovery request only in its reply, it is waived.

Whitepages asserts that it is entitled to discovery because "the FAA's procedure mirrors the three phases of federal civil lawsuits: a motion to compel arbitration akin to a motion to dismiss; followed by optional discovery before summary judgment, if the motion is denied; followed by a mini-trial, if necessary." *Knapke*, 38 F.4th at 833 (citing *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021)). But *Hansen*, upon which *Knapke* relies, does not hold—inconsistent with *Wilson*—that when a defendant's motion to compel arbitration is denied, the defendant is entitled to proceed to discovery.

In *Hansen*, the defendants moved to compel arbitration and, after the plaintiff filed an opposition, "the district court held a hearing in which the parties presented evidence concerning whether they had formed an arbitration agreement." 1 F.4th at 670. Based on the evidence presented, the district court determined that there was a genuine issue of material fact as to

ORDER DENYING DEFENDANT'S MOTION TO
COMPEL ARBITRATION - 3

whether there was a valid arbitration agreement. *Id.* at 671. The district court held that a jury trial was required to resolve the factual dispute and denied the defendants' motion to compel arbitration, which decision the defendants appealed. *Id.*

The Ninth Circuit vacated the district court's denial of the motion to compel arbitration, holding that the district court improperly "issued a nonfinal ruling on the motion to compel arbitration." *Id.* at 672. The Ninth Circuit interpreted the FAA, 9 U.S.C. § 4,[1] to hold that "once a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved." *Id.* The Ninth Circuit remanded the case to the district court to proceed to trial. *Id.*

*Hansen*'s holding is a narrow procedural one: rather than denying a motion to compel arbitration when there is a genuine issue of material fact as to the existence of a valid arbitration agreement, a district court must hold the motion in abeyance and proceed to trial to resolve any factual issues. It is unclear why *Knapke* relies on *Hansen* to suggest that "a motion to compel arbitration [is] akin to a motion to dismiss, followed by optional discovery before summary judgment," 38 F.4th at 833, when *Hansen* relies on district court cases holding that motions to compel arbitration are reviewed like motions for summary judgment. 1 F.4th at 670 (citing, *e.g.*, *Tabas v. MoviePass, Inc.*, 401 F. Supp. 3d 928, 936 (N.D. Cal. 2019) ("When considering a motion to compel arbitration, a court applies a standard similar to the summary judgment standard of [Federal Rule of Civil Procedure] 56.") (citation omitted)). To be sure, there may be

---

[1] This section provides in pertinent part, "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. *If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue*, the court shall proceed summarily to the trial thereof" (emphasis added).

ORDER DENYING DEFENDANT'S MOTION TO
COMPEL ARBITRATION - 4

cases in which a motion to compel arbitration is reviewed more like a motion to dismiss because the defendant does not present evidence and specifically requests discovery. But when a defendant does not request discovery in its motion to compel arbitration, discovery is waived. *See Wilson*, 944 F.3d at 1220 ("The district court did not err in not permitting discovery on actual notice before denying the motion to compel arbitration.").

Thus, the Court considers only arguments and evidence presented in Whitepages' motion to compel arbitration and denies its request for discovery.

B.      Arbitration Agreement

Whitepages does not show that a valid agreement to arbitrate exists. It includes a screenshot of peoplesearch.com showing that when a user accesses the site, a pop-up appears with a link to Terms of Service. Dkt. # 16 at 5–6. To clear this pop-up, the user must click a "Got it" button.[2] Whitepages asserts that Plaintiffs are bound by an arbitration agreement in its Terms of Service because they or their attorneys clicked the "Got it" button.

But Whitepages presents no evidence apart from the screenshot of peoplesearch.com to show that Plaintiffs or their attorneys clicked the "Got it" button. Whitepages suggests that because the complaint includes screenshots of whitepages.com (not peoplesearch.com), Plaintiffs or their counsel must have accepted its Terms of Service. Dkt. # 16 at 5, 8. Whitepages neither cites the screenshots in the complaint nor includes additional screenshots to support its statement that the screenshot of the pop-up on peoplesearch.com is representative of its other websites. Because the Court cannot infer from a single screenshot of peoplesearch.com that that Plaintiffs

---

[2] Plaintiffs dispute this fact and contend that the Court cannot consider the screenshot of peoplesearch.com. Dkt. # 25 at 11 & n.1, 13 & n.3. But because the Court denies Whitepages' motion to compel arbitration even considering the screenshot and assuming that this fact is true, it need not resolve these issues.

ORDER DENYING DEFENDANT'S MOTION TO
COMPEL ARBITRATION - 5

or their attorneys clicked a button on whitepages.com agreeing to its Terms of Service, the Court denies the motion to compel arbitration.

The evidence that Whitepages presents for the first time in its reply could have been included in its initial motion. First, Whitepages includes a screenshot of a search for "Jennifer Carrera" on whitepages.com that has a pop-up requiring a user to accept Whitepages' Terms of Service to view the results. Dkt. # 28 at 9. And Whitepages cites screenshots in the complaint that it asserts are of similar webpages. *See, e.g.*, Dkt. # 1 at 22, ¶ 74. Second, Whitepages includes a declaration by Nadine Thisselle, Vice President of Finance and Operations for Whitepages, declaring that Whitepages records when users accept its Terms of Service and that on August 31, 2024 (a few days before Plaintiffs filed their complaint) someone searched all three Plaintiffs' names on whitepages.com. Dkt. # 29 at 3. Because this evidence is not presented in response to unexpected assertions made in Plaintiffs' response, the Court declines to consider them. *See Wilson*, 944 F.3d at 1220 (observing that the defendant "as operator of the app, undoubtedly had at least some information probative of actual notice in its control, but it offered nothing on the actual notice issue.").

Even if the Court considered the screenshot and declaration, they do not sufficiently show a valid arbitration agreement. Although Whitepages asserts that the screenshots in Plaintiffs' complaint could not have been taken without clearing a pop-up that requires them to agree to Whitepages' Terms of Service, the screenshots included in Plaintiffs complaint are not of the same webpage as that in the screenshot included in Whitepages' reply. *Compare* Dkt. # 28 at 9 (search for "Jennifer Carrera" on whitepages.com) *with* Dkt. # 1 at 22–27, ¶¶ 74 (free-preview page of Jennifer Carrera's information), 75 (same free-preview page), 77 ("Select Plan" page),

80 ("Special Offer" page).³ Plaintiffs also allege that anyone can access a free-preview page through various links that appear in the results of internet search engine queries, rather than through whitepages.com directly. Dkt. # 1 at 21, ¶ 73. They also attach a declaration to support this allegation. Dkt. # 25-1 at 3, ¶ 12.

That someone searched for Plaintiffs' names on whitepages.com and accepted its Terms of Service a few days before the complaint was filed is not, by itself, enough to sufficiently show the existence of a valid arbitration agreement. Although the fact that someone searched for all three of Plaintiffs' names suggests that they are involved in this litigation, it is Whitepages' burden under Washington law to establish an agency relationship.⁴ *Knapke*, 38 F.4th at 832 (citing *Afoa v. Port of Seattle*, 421 P.3d 903, 911 (Wash. 2018)). Whitepages presents no evidence about the scope of Plaintiffs' agreement with their attorneys. *See id.* at 834 (vacating and remanding for discovery because "[d]iscovery could reveal, among other things, both the contours of Knapke's agreement with Reilly's law firm and the limits, if any, on Reilly's authority to act on Knapke's behalf."). Whitepages acknowledges that discovery would allow it to "include the date of Plaintiffs' engagement of their attorneys and information regarding whether their attorneys' accessing and assenting to the Whitepages Terms of Service was within the scope of their engagement." Dkt. # 28 at 11. For the reasons discussed above in Section III.A, the Court denies Whitepages' request for discovery and rules on this motion based on the record before it.

The Court denies Whitepages' request for a stay of this action because this request is contingent on the existence of at least one valid arbitration agreement. *See* Dkt. # 16 at 10–11.

---

³ Whitepages does not cite any other paragraph of Plaintiffs' complaint. Dkt. # 28 at 9.
⁴ Whitepages asserts that Washington law applies. *See* Dkt. # 16 at 7. Plaintiffs contend that the Court need not reach the choice of law issue because there is no evidence of an agreement to arbitration. Dkt. # 25 at 8.

ORDER DENYING DEFENDANT'S MOTION TO
COMPEL ARBITRATION - 7

IV

CONCLUSION

For these reasons, the Court DENIES Whitepages' motion to compel arbitration, including its requests for discovery and a stay of this action.

Dated this 9th day of June, 2025.

John H. Chun
United States District Judge

ORDER DENYING DEFENDANT'S MOTION TO
COMPEL ARBITRATION - 8