HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JENNIFER CARRERA, CAROL ANDERSON, BECKY JO PALMER, ELIZABETH STACHOVIC, RANDALL BRILEY, *individually and on behalf of all others similarly situated*,

Plaintiffs,

v.

WHITEPAGES, INC.

Defendant.

Case No. 2:24-cv-01408-JHC

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR A PROTECTIVE ORDER

NOTE ON MOTION CALENDAR:
**August 21, 2026**



**HEDIN LLP**
1395 BRICKELL AVE., # 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

Plaintiffs Jennifer Carrera, Carol Anderson, Becky Jo Palmer, Elizabeth Stachovic, and Randall Briley hereby respectfully submit this Opposition in response to Defendant's Motion for a Protective Order (ECF No. 59) (the "Motion").

## INTRODUCTION

This case is about Whitepages Inc.'s ("Defendant" or "Whitepages") use of millions of Americans' names and identities to advertise its products and services without consent. *See* ECF No. 55 (First Amended Complaint) (the "Complaint" or "Compl."). This advertising violates the 'right of publicity,' which prohibits the unlicensed commercial use of an individual's name, image, likeness, and, often, their identity. Plaintiffs bring suit as representatives of similarly situated classes of individuals whose names and identities were misappropriated by Defendant in violation of Washington, Ohio, Illinois, and California law. *See id*.

Defendant's Chief Executive Officer ("CEO"), Leigh McMillan, is closely and personally involved in the advertising which lies at the heart of this case. Evidence shows that she is in possession of materials squarely responsive to Plaintiffs' discovery requests and which have not been produced. It further shows that she directs, oversees, and decides when and how Whitepages uses individuals' names and identities in advertising.

The Motion should be denied. Defendant has produced no evidence substantiating its claims of undue burden, expense, or harassment. Instead, the Court should direct Defendant to search McMillan's materials for responsive information and produce her for a deposition. *See* Fed. R. Civ. P. 26(c) ("If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery.").

## BACKGROUND

Defendant operates the website whitepages.com. Compl., ¶ 16. Defendant publishes millions of "profile" pages on this website, each of which uses one person's name and identity to advertise Defendant's subscription service and packages of background reports. *See, e.g.*, *id*. at ¶¶ 68-84, 193-

196, 257-259. Within Whitepages, these profile pages are referred to as "person detail" pages. *See* Declaration of Tyler K. Somes in Support of Plaintiffs' Opposition to Defendant's Motion for a Protective Order ("Somes Decl."), Ex. 1 (Jennifer Wood Deposition Transcript, 15:1-11) ("Wood Dep. Tr."). Further, Defendant uses these individuals' names in search engine optimization ("SEO") techniques to ensure that the profile pages rank highly whenever someone searches for these individuals on Google. Compl. at ¶¶ 312-323. Finally, Defendant also publishes "funnel" pages (e.g., pages in its checkout flow) on the website which similarly use the same individuals' names and identities in advertising. *See* Wood Dep. Tr. at 171:16-21; Compl. at ¶¶ 76-84.

Plaintiffs have taken substantial discovery. They have served 62 requests for production, 52 requests for admission, and 21 interrogatories. Somes Decl., ¶ 5. Defendant has produced over 6,300 documents consisting of over 16,000 pages. *Id*. at ¶ 6. Plaintiffs have taken two depositions of Defendant's high-ranking corporate officers, including its Chief Technology Officer ("CTO"), Eric Merritt, and its Chief Marketing Officer ("CMO"), Jennifer Wood. *Id*. at ¶¶ 7-8.

On July 17, 2026, Plaintiffs advised Defendant that they intended to notice the deposition of its CEO, Leigh McMillan and requested that she be added as a custodian under the Agreement Regarding Discovery of Electronically Stored Information and Order (ECF No. 24) (the "ESI Protocol"). *Id*. at ¶ 10. On July 22, 2026, the respective counsels spoke on the phone about this request. *Id*. at ¶ 11. Later that day, Plaintiffs provided Defendant documents indicating McMillan's knowledge of relevant facts and possession of unproduced responsive materials. *Id*. at ¶ 12.

Plaintiffs' counsel served McMillan's deposition notice on July 24, 2026.[1] *Id*. at ¶ 13. On July 29, 2026, Plaintiffs offered to limit McMillan's deposition to six hours (down from seven hours provided for by Rule 30) and provided a list of ten Boolean searches to run against her electronically

[1] Counsel's email transmitting the deposition notice noted: "We are flexible on this date if August 25 does not work for the witness." Somes Decl., ¶ 13.


**HEDIN LLP**
1395 BRICKELL AVE., # 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

stored information ("ESI") (down from thirteen Boolean searches run on other custodians' ESI).[2] *Id*. at ¶¶ 14, 15; *id*. at Ex. 2 & 3. Defendant did not provide a counter-proposal.[3] *Id*. at ¶ 18. Instead, Defendant filed the Motion two days later.

**LEGAL STANDARD**

A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). In assessing whether discovery is "proportional", a court should consider: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Under Rule 26 a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The party seeking to limit discovery has the burden of proving 'good cause,' which requires a showing 'that specific prejudice or harm will result' if the protective order is not granted." *Schreib v. Am. Fam. Mut. Ins. Co.*, 304 F.R.D. 282, 284–85 (W.D. Wash. 2014) (quoting *In re Roman Cath. Archbishop of Portland*, 661 F.3d 417, 424 (9th Cir. 2011). "[B]road allegations of harm, unsubstantiated by specific examples or articulate reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins*. Co., 966 F.2d 470, 476 (9th Cir. 1992).

---

[2] Defendant's statement that Plaintiffs' July 29, 2026, search proposal "increases the unique search terms by 13 terms to a total of 98 unique search terms" is based upon the ESI Protocol's disjunctive counting method for search terms. *Id*. at ¶ 17; *see* Mot. at 4. That counting method increases in the number of "search terms" against the previously run search parameters because Plaintiffs added one disjunctive Boolean search for McMillan, while simultaneously *removing* four Boolean searches which were run on other custodians' ESI. *See* Somes Decl., Exs. 2 & 3.

[3] Defendant did *not* make its "alternative" proposal to limit McMillan's deposition to three hours (which is presented in the Motion) to Plaintiffs' counsel before seeking a protective order. Somes Decl. at ¶ 18.



**HEDIN LLP**
1395 BRICKELL AVE., # 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

## ARGUMENT

Defendant's Motion should be denied. Defendant does not substantiate any burden, expense, or harassment resulting from the requested discovery. As a result, the Motion categorically fails to demonstrate "good cause" as required for a protective order. *See* Fed. R. Civ. P. 26(c)(1).

On the contrary, the evidence shows that McMillan personally directs and oversees Defendant's use of names and identities for advertising purposes. It further shows that she possesses unproduced responsive materials. Plaintiffs therefore request an Order requiring Defendant to add McMillan as a custodian and produce her for a deposition. *See* Fed. R. Civ. P. 26(c)(2).

### I. Defendant Does Not Substantiate Any Undue Burden, Expense, or Harassment Which Would Arise from Complying with the Requested Discovery.

Defendant categorically fails to meet Rule 26(c)(1)'s "good cause" standard because it does not provide evidence substantiating its allegations of undue burden, expense, or harassment—the only three grounds upon which it moves for a protective order. *First*, Defendant provides no evidence even addressing the burden, expense, or harassment supposedly associated with McMillan's participation in a deposition. *See* Mot. at 4-9; ECF No. 60. *Second*, as to the custodial search, Defendant's assertions of burden, expense, and harassment are supported solely by its counsel's averment that compliance would require "substantial resources and expense," without any further quantification (e.g., the number of staff hours, attorney hours, or monetary costs required to comply, or the volume of documents which would need to be reviewed). *See* ECF No. 60, ¶ 22. Absent a more detailed showing, the Court cannot weigh the supposed burden, expense, or harassment[4] of compliance against its benefit to the litigation. *See* Fed. R. Civ. P. 26(c)(1); *see Fierro Cordero v. Stemilt AG Servs., LLC,* 142 F.4th 1201, 1207 (9th Cir. 2025) ("A district court

[4] Unlike "undue burden or expense," "harassment" is not listed as a basis for granting a protective order in the Rules. *See* Fed. R. Civ. P. 26(c)(1). Nevertheless, Plaintiffs address Defendant's conclusory allegations of harassment because they are presented throughout the Motion as a purported basis for the requested protective order. *See* Mot. at 4 – 9.


HEDIN LLP
1395 BRICKELL AVE., # 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

must identify and discuss the factors it considered in its 'good cause' examination to allow appellate review of the exercise of its discretion.") (cleaned up).

In the Ninth Circuit, "broad allegations of harm, unsubstantiated by specific examples or articulate reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc.*, 966 F.2d at 476. "Good cause" requires "a factual showing of a particular and specific need for the protective order." *Pulphus v. Compass Health*, No. 2:21-cv-00930-TL-BAT, 2022 WL 474081, at *3 (W.D. Wash. Feb. 16, 2022). Significantly, "[a]ssertions of a burden without specific estimates of staff hours needed to comply are typically rejected." *Pappas v. Naked Juice Co. of Glendora*, No. CV-118276, 2012 WL 12885108, at *2 (C.D. Cal. Oct. 18, 2012) (cleaned up).

Defendant does not substantiate its claims of undue burden, expense, or harassment. *See* Mot. at 4-9. The declaration submitted by Defendant's counsel states simply:

> Requiring Whitepages to add McMillan as a custodian now, collect and process her documents, review those documents for responsiveness and privilege, and produce those documents would require substantial resources and expense, including but not limited to multiple attorney hours performing these tasks.

ECF No. 60, ¶ 22. To begin, this statement only addresses the custodial search. It never mentions the deposition. This leaves the Motion's argument as to the deposition wholly unsupported by evidence. *See id.* Defendant cannot show "good cause" on a non-existent evidentiary showing. *See, e.g.*, *Smartwings, A.S. v. Boeing Co.*, No. C21-918 RSM, 2023 WL 3075698, at *2 (W.D. Wash. Apr. 25, 2023) ("There is no evidence that the deponents do not have the ability and means to travel to the United States for their depositions.") (denying a motion for a protective order); *Pappas*, 2012 WL 12885108 at *2 ("defendant's generalized objections of burdensomeness, unsupported by any detailed information whatsoever regarding the estimated time and expense required to respond to specific discovery requests, are insufficient.").


**HEDIN LLP**
1395 BRICKELL AVE., # 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

As to the custodial search: Defendant furnishes no estimate of the time required to comply beyond "multiple attorney hours," which could mean anything between two and an infinite number of hours. *See* ECF No. 60. No volume of documents returned by Plaintiffs' proposed searches is provided. *See id*. No monetary costs are quantified. *See id*. Defendant cannot show "good cause" based solely upon the threadbare assertion from its counsel included in his declaration. *See, e.g.*, *Wilson v. Hartford Ins. Co. of the Midwest*, No. C10-993RAJ, 2011 WL 13234431, at *2 (W.D. Wash. Mar. 28, 2011) ("Hartford provides no evidence whatsoever to support this contention, ***it relies instead on the bare assertion of its counsel***. If Hartford wishes to demonstrate undue burden, it must produce evidence of an undue burden. It has not attempted to do so.") (emphasis added) (denying a motion for a protective order); *LVB-Ogden Mktg., LLC v. Bingham*, No. 2:18-CV-00243-TSZ, 2018 WL 6830319, at *4 (W.D. Wash. Dec. 28, 2018) ("HyTech does not inform the Court as to the volume of financial records and business plans that would need to be reviewed, or the time and money it would require to review them.") (same).

For this reason alone, Defendant has not met its burden and the Motion should be denied.

### II. Defendant Should Add Leigh McMillan as a Custodian and Produce Responsive Materials in Her Possession, Custody, or Control.

Defendant has not met its burden for a protective order prohibiting the production of responsive materials in Leigh McMillan's possession. On the contrary, the evidence shows that McMillan possesses responsive materials which have not yet been produced. Accordingly, the Court should require Defendant to add McMillan as a custodian. *See* Fed. R. Civ. P. 26(c)(2).

*First*, an evidentiary showing is required for a protective order precluding a custodial designation. Defendant has not met that burden. *See supra* at 5-6. Consequently, the Motion should be denied, including as to the search of McMillan's materials. *See, e.g., Strategic Partners, Inc. v. FIGS, Inc.*, No. CV 19-2286-GW (KSX), 2020 WL 2527056, at *7 (C.D. Cal. Feb. 6, 2020) (adding



**HEDIN LLP**
1395 BRICKELL AVE., # 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

custodians where the party resisting discovery "present[ed] no specific information to support a finding that a search of additional custodians would be unduly expensive, time consuming, or otherwise disproportionate to the needs of the case[.]"); *In Re Mosaic LLM Litig.*, No. 24-CV-01451-CRB (LJC), 2025 WL 1768001, at *2 (N.D. Cal. June 26, 2025) ("the Court has no reason to find that designating [the CEO] as one of the thirteen custodians would pose an undue burden on Defendants.").

*Second*, McMillan should be added as a custodian. Evidence shows that McMillan is in possession—including unique possession—of unproduced responsive materials. Courts regularly order such designations on far weaker showings. *See, e.g, In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 2021 WL 10282213, at *2 (N.D. Cal. Nov. 14, 2021) (requiring Facebook's CEO Mark Zuckerberg and Chief Operating Officer Sheryl Sandberg to be added as custodians because they were "likely to possess unique, relevant information because they were key decision-makers related to issues at the heart of Plaintiffs' allegations") (collecting similar authorities).[5]

To start, McMillan regularly corresponds with Whitepages's owner, Alex Alegard, about the topics at the center of this litigation.[6] For example, in December 2022, McMillan wrote to Algard: "[redacted]" Somes Decl., Ex. 4 (WP-CAR_004909) (emphasis added); *see also* Compl. ¶¶ 312-323 (describing the use of names in SEO techniques). One year later, McMillan again wrote to Algard:

[redacted]

[5] As courts widely recognize, the "apex doctrine is generally inapplicable in the context of document custodians." *In Re Mosaic LLM Litig.*, 2025 WL 1768001 at *1 (adding a CEO as a document custodian due to his "unique leadership role relative to other custodians"). Instead, "Rule 26 is sufficient to mitigate any such risk." *See L.A. All. v. City of Los Angeles*, No. 2:20-CV-2291-DOC, 2023 WL 5505037, at *6 (C.D. Cal. Aug. 2, 2023).

[6] Algard is not a custodian whose documents have been searched for responsive materials. Somes Decl., ¶ 16, Ex. 3.



**HEDIN LLP**
1395 BRICKELL AVE., # 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

Somes Decl., Ex. 5 (WP-CAR_005790) (emphasis added). Defendant has produced many more pages of correspondence between McMillan and Algard. *See, e.g., id* at Ex. 6 (WP-CAR_003491) (discussing Whitepages's SEO strategy around a search for "Sally Smith address").

Plaintiffs only received the forgoing correspondence because existing custodians were copied on those emails. But their very existence indicates the likelihood of additional responsive communications. In fact, there is ***direct evidence*** showing that McMillan also communicates ***privately*** with Algard (e.g., without others copied). *See id*. at Ex. 7 (WP-CAR_005910) ([redacted]). Those communications should be searched and responsive materials produced. *See, e.g.*, *In Re Mosaic LLM Litig.*, 2025 WL 1768001 at *2.

McMillan also directs changes to the appearance of the profile and funnel pages. In an April 2024 email she wrote to subordinates: "Below is the summary of the potential CVR-impacting changes on Person Details from the CRO Slack channel."[7] Somes Decl., Ex. 8 (WP-CAR_015339). She listed seven changes to the pages, including new sections, new content, additional "calls to action" and links. *Id*.[8] The appearance of these pages (and their "calls to action" encouraging users to purchase Whitepages's products and services) go to the heart of Plaintiffs' allegations.

McMillan also directly oversees Whitepages's use of individuals' names in advertising. In November 2021, Whitepages employee Kate Hearon sent McMillan an email entitled "Concerns? Email channel: Purchases tied to people." *Id*. at Ex. 9 (WP-CAR_016216). Hearon wrote:

> **I recall you said using a person's name to sell a background report was okay, but not a subscription. Is that correct?** What about a background bundle, where 1 background report is for the person mentioned, but the other reports purchased are credits to be used on someone else in our database?

---

[7] "CVR" stands for "conversion rate", meaning the rate at which visitors to the pages make a purchase. "CRO" stands for "conversion rate optimization."

[8] She further wrote in the same email: "Alex is aware and onboard with the plan and expecting us to come back in the next couple of weeks with forecast of the potential tradeoffs and success metrics." *Id*.



**HEDIN LLP**
1395 BRICKELL AVE., # 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

*Id*. (emphasis added). This email bears directly on Whitepages's knowledge, intent, and deliberate disregard of its legal obligations. Following this exchange, Whitepages continued to use individuals' names to sell subscriptions without consent for years to come—despite the knowledge attributable to both Hearon and McMillan that doing so was not "okay." *See, e.g.*, Compl., ¶¶ 71, 76, 77, 80. No response to this email from McMillan has been produced, and only a search of her files can determine whether one exists in her custody. *See* Somes Decl., ¶ 25.[9]

Defendant argues that adding McMillan as a custodian would "defeat the purpose of the ESI Agreement conferral process" given that she was not designated as a custodian earlier. Mot. at 8. This is no basis for withholding responsive materials in her possession. At that earlier time, Plaintiffs were not in possession of evidence showing that McMillan personally directed Defendant's use of names for advertising and SEO purposes, nor that she even possessed responsive information at all. That has clearly changed. Each Bates-stamped document cited in this brief was produced *after* the Parties' initial agreement regarding the search methodology. Somes Decl., ¶¶ 19-24. Eric Merritt and Jennifer Wood's depositions similarly occurred after that date. *Id*. at ¶¶ 7-8; *see infra* at 12 (discussing evidence from Wood's deposition). Plaintiffs started with a narrow list of custodians, adduced evidence of non-duplicative responsive materials in McMillan's possession, and then requested to add her as a custodian—an entirely standard course of discovery.

Plaintiffs never waived the right to seek additional custodians. In their January 20, 2026, email agreeing to the search methodology, Plaintiffs noted: "by agreeing to the search terms, we are *not waiving* Whitepages's responsibility to locate and produce documents that it otherwise knows are responsive to the requests." Somes Decl., ¶ 29, Ex. 13 (emphasis added). Moreover, the ESI Protocol specifically envisions that an agreed search methodology will evolve as discovery

[9] Neither Algard nor Hearon appear as the sender or recipient of any communication on Defendant's privilege log. *See* Somes Decl., Ex. 10.



**HEDIN LLP**
1395 BRICKELL AVE., # 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

progresses. ECF No. 24, ¶(C)(2) ("The parties shall continue to cooperate in revising the appropriateness of the search methodology.").

Penalizing Plaintiffs in the manner suggested by Defendant would incentivize sweeping discovery demands early in a case, dissuade compromise, and undoubtedly work prejudice to Plaintiffs given the responsive materials in McMillan's possession. Courts often add new custodians after an initial agreement when there is reason to think that those individuals possess responsive, additional materials. *See, e.g.*, *In Re Disposable Contact Lens AntiTrust Litig.*, No. 3:15-MD-2626-J-20JRK, 2016 WL 6518660, at *3 (M.D. Fla. Nov. 1, 2016) (adding six additional custodians after the parties had previously agreed on 12 custodians); *SPS Techs., LLC v. Briles Aerospace, Inc.*, No. CV 18-9536 MWF (ASX), 2019 WL 13108021, at *1 (C.D. Cal. June 25, 2019) (similar). Tellingly, Defendant cites no authority in support of its waiver argument. Mot. at 8.

"Courts regularly add high-ranking executives as custodians where their files are likely to contain relevant information." *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 2021 WL 10282213 at *5 (collecting authorities); *Shenwick v. Twitter, Inc.*, No. 16-CV-05314-JST (SK), 2018 WL 833085, at *1 (N.D. Cal. Feb. 7, 2018) (adding Twitter's CEO Jack Dorsey as a custodian) ("The idea that responsive documents will necessarily be found in other custodians' records is not sufficient to defeat a search of his files. It is always possible that one custodian will have a document or documents that other custodians have not retained, or even that one custodian may have created a document, such as handwritten notes, that no other custodian possesses."). Plaintiffs have easily made that showing with respect to McMillan. Defendant's Motion should be denied and McMillan's materials should be searched for responsive information.



**HEDIN LLP**
1395 BRICKELL AVE., # 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

### III. Defendant Should Produce Leigh McMillan for a Deposition.

Defendant's Motion to preclude McMillan's deposition should be denied. Instead, the Court should Order Defendant to produce McMillan for a deposition not to exceed six hours.

Neither the Supreme Court nor Ninth Circuit has adopted the 'apex' deposition doctrine. *See In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. 23-MD-03084-CRB (LJC), 2025 WL 896412, at *1–2 (N.D. Cal. Mar. 24, 2025). "Absent extraordinary circumstances, it is rare for a court to disallow the taking of a deposition." *Waymo LLC v. Uber Techs., Inc.*, No. 17-CV-00939-WHA (JSC), 2017 WL 11917905, at *1 (N.D. Cal. July 7, 2017) (cleaned up) (ordering the deposition of Alphabet, Inc.'s CEO Larry Page). "When a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition." *Id.*

*First*, the Motion should be denied because Defendant has not offered any evidence whatsoever to substantiate its allegations of undue burden, expense, or harassment. *See supra* at 5. For this same reason, the Motion's alternative request to limit the deposition to three hours after additional depositions have occurred should be denied. *See* Mot. at 7-8. There is simply no factual basis in the record for a finding of "good cause" as to either preventing or limiting McMillan's deposition. *See, e.g.*, *Pappas*, 2012 WL 12885108 at *2; *see also supra* at 5.

*Second*, the Court should order Defendant to produce McMillan for a deposition. The evidence shows that McMillan directs and oversees Defendant's use of individuals' names for advertising purposes. *See, e.g.*, *supra* at 10-12. This is not a situation where a corporate executive is removed—in any measure—from the conduct giving rise to liability. *See 10th Gear v. PACCAR Inc.*, No. 2:23-CV-01933-RSL, 2025 WL 2637683, at *1 (W.D. Wash. Sept. 12, 2025) (cleaned up) ("Where there is reason to believe that the apex deponent has unique knowledge of high-level events, analysis, and decision-making relevant to the claims at issue, where the apex deposition is proportional to the needs of the case, and where the burden of producing the apex deponent appears


HEDIN LLP
1395 BRICKELL AVE., # 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

to be no greater than the alternatives, any presumption of abuse or harassment that arises from the deponent's executive-level role in the company falls away.").

On the contrary, McMillan is a direct witness and participant in the central allegations. For example, the email from Hearon to McMillan, *supra* at 8-9, attributes an important statement to McMillan. It says: "I recall you said using a person's name to sell a background report was okay, but not a subscription." Somes Decl., Ex. 9. On the present record, however, that representation is hearsay and inadmissible to establish that McMillan actually made the statement referenced by Hearon. Only McMillan can answer whether she made that statement in an admissible format—another reason she should be deposed.

An additional example: in February 2022, Defendant's CMO, Jennifer Wood, sent McMillan designs for Whitepages's pricing page.[10] Somes Decl., Ex. 11 (WP-CAR_006175). Whitepages was then fighting class action lawsuits brought under the right of publicity statutes of Illinois and Ohio.[11] In response to Wood, McMillan wrote:

> In terms of the name removal, **we are starting with the 2 states, but expect we'll shortly expand it to at least 14 states (where there are right of publicity laws in some shape or form)** and if we can narrow the impact, ultimately to nationwide.

*Id*. at WP-CAR_006175 (emphasis added).

In her deposition, Wood confirmed that the "2 states" McMillan referred to in the quote above were Illinois and Ohio. Somes Decl., Ex. 1 (Wood Dep. Tr., 144:10-12). However, when asked whether she knew what the other "14 states (where there are right of publicity laws in some shape or form)" McMillan referred to were, Wood answered: "I do not." *Id*. at 144:13-15. Wood was also unable to answer whether these changes applied to pages beyond those of Illinois and Ohio residents. *Id*. at 146:18-147:3-9 ("I don't know. I -- I don't know."). Presumably, McMillan would

[10] The pricing page is one of the "funnel" pages which use individuals' names and identities to advertise Whitepages' products and services. Somes Decl., Ex. 1 (Wood Dep. Tr., 35:23-36:10).

[11] *See* Class Action Settlement Agreement, *Butler v. Whitepages, Inc.*, No. 1:19-cv-04871 (N.D. Ill.), ECF No. 251-1, April 28, 2022.



**HEDIN LLP**
1395 BRICKELL AVE., # 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

know what she herself referred to in this email (and many others). *See, e.g.*, *10th Gear*, 2025 WL 2637683, at *2 ("Rich appears to be the best (if not the only) witness to explain and contextualize his statements . . . .") (denying a motion for a protective order).

Defendant's reliance on *Encinas v. Univ. of Washington* is completely misplaced. *See* No. 2:20-CV-01679-TL, 2023 WL 6066522, at *1 (W.D. Wash. Sept. 18, 2023). In *Encinas*, a Peer Support Specialist for Harborview Medical Center sought to depose the president of the University of Washington (which owned Harborview) in an employment case. *Id*. Unsurprisingly, the president was not involved in the allegations of the complaint. *Id*. at *2. That is unlike in this case, where McMillan personally directs Whitepages's use of the names and identities in advertising. *See supra* at 7-12. Moreover, in *Encinas* the plaintiff noticed the president's deposition "*before* actually deposing other individuals and obtaining relevant discovery." *Id*. at *3 (emphasis in original). Here, by contrast, Plaintiffs have already deposed both Defendant's CTO and CMO and obtained over 16,000 pages of documents in discovery. Somes Decl., ¶¶ 6-8.

Defendant argues that Plaintiffs should take the depositions of "lower-level" employees before examining McMillan. Mot. at 6-7. It is unclear how many depositions Defendant would require. *See id*. Regardless, Plaintiffs have already deposed Defendant's CTO and CMO. Somes Decl., ¶ 7-8. They need not depose every eligible person before McMillan—that would be *more* burdensome and expensive than the alternative. *See, e.g.*, *Garner v. Amazon.com, Inc.*, No. 2:21-CV-00750-RSL, 2023 WL 6038012, at *2 (W.D. Wash. Sept. 15, 2023) ("deposing Limp does not appear to be any more burdensome than Amazon's proposal of preparing for and defending the depositions of six different witnesses, [] none of whom has the breadth of – or even access to – all of the information plaintiffs seek.").

McMillan has unique knowledge of important information bearing directly on Plaintiffs' allegations. Ample authority shows that she should be deposed on this record. *See, e.g.*, *Kadrey v. Meta Platforms Inc.*, No. 3:23-cv-03417, Dkt. 171 (N.D. Cal., Sept. 24, 2024) (ordering Mark


**HEDIN LLP**
1395 BRICKELL AVE., # 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

Zuckerberg to sit for a deposition because he was the "chief decision maker and policy setter for [the products] at issue in this action."); *Demartini v. Microsoft Corporation*, No. 3:22-cv-08991, Dkt. 318 (N.D. Cal., Jan. 8, 2024) (ordering Microsoft CEO Satya Nadella's deposition where that he had "direct involvement" in the negotiations culminating in a challenged acquisition). The Motion should be denied, and Defendant should produce McMillan for a deposition not to exceed six hours.

**CONCLUSION**

Plaintiffs respectfully request that the Court enter an Order denying the Motion, adding McMillan as a custodian and requiring Defendant to produce her for a deposition. *See* Fed. R. Civ. P. 26(c) ("If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery.").


**HEDIN LLP**
1395 BRICKELL AVE., # 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

DATED this 17th day of August, 2026.

Respectfully submitted,

By: /s/ Nick Major

**NICK MAJOR LAW**

NICK MAJOR
450 Alaskan Way S. #200
Seattle, WA 98104
Telephone: (206) 410-5688
E-Mail: nick@nickmajorlaw.com

**HEDIN LLP**

Frank S. Hedin (*pro hac vice*)
1395 Brickell Ave, Suite 610
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
Email: fhedin@hedinllp.com

Tyler K. Somes (*pro hac vice*)
1100 15th Street NW, Ste 04-105K
Washington, DC 20005
Telephone: (202) 900-3331
Facsimile: (305) 200-8801
Email: tsomes@hedinllp.com

*Counsel for Plaintiffs and the Putative Class*

**WORD COUNT**

I certify that this memorandum contains 4,177 words in compliance with the Local Rules.

DATED this 17th day of August 2026.

/s/ *Tyler K. Somes*
Tyler K. Somes